**MARYANNE B. COOPER, SBN 215563**
**MILES B. COOPER, SBN 209085**
**ROBERT IGLEHEART SBN 291650**
**BRYAN S. VIX, SBN 344358**
**COOPERS LLP**
2261 Market Street, #330
San Francisco, California 94114
Telephone: 415-434-2111
Facsimile: 415-434-2112
OAK@Coopers.law

**BRIAN GEARINGER, SBN 146125**
**GEARINGER LAW GROUP**
740 Fourth Street
Santa Rosa, CA 95404
Telephone: 415-440-3102
Brian@Gearingerlaw.com

Attorneys for Plaintiff, M.B.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.B., | Case No. 3:24-cv-00301-RFL |
| Plaintiff, | |
| v. | **SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF** |
| CITY AND COUNTY OF SAN FRANCISCO, CHIEF OF SAN FRANCISCO JUVENILE PROBATION DEPARTMENT KATHERINE MILLER, DEPUTY PROBATION OFFICER WARREN JOHNSON, SUPERVISING PROBATION OFFICER SCOTT KATO, SUPERVISING PROBATION OFFICER BRYAN THOMASSON, DEPUTY PROBATION OFFICER NIGEL HICKS, and DOES 1-30, inclusive, | (42 U.S.C. §1983, 42 U.S.C. § 1981, California Civil Code § 52.1, California Government Code § 815.6, False Imprisonment, and negligence) |
| Defendants. | **DEMAND FOR JURY TRIAL** |

COOPERS LLP
TRIAL LAWYERS

**INTRODUCTION**

1.     This case arises from the harm caused by the City and County of San Francisco ("City") when it unlawfully held M.B., an African-American youth under the jurisdiction of the Juvenile Court, in solitary confinement in juvenile hall. From Wednesday, December 21, 2022, to Saturday, December 24, 2022, the San Francisco Juvenile Probation Department held M.B. in solitary confinement within the county's locked juvenile facility, in violation of federal and state constitutional and statutory protections, and state regulations.

2.     As a result of the actions and policies, practices, and/or customs of the San Francisco Juvenile Probation Department and its employees, M.B. was unlawfully held in isolation against his will in a locked cell, deprived of freedom of movement and social interaction, subjected to unlawful punishment, and denied adequate, safe, caring, and humane treatment.

3.     This civil rights and tort action seeks general, special, and punitive damages from Defendants for violating Plaintiff's rights under the United States Constitution, California Constitution and California law. Further, Plaintiff seeks declaratory and injunctive relief demanding that Defendants cease the unlawful use of solitary or room confinement as to Plaintiff.

**JURISDICTION**

4.     This action arises under 42 U.S.C. Section 1983. Jurisdiction is based on 28 U.S.C. Sections 1331 and 1334.

5.     This action is brought pursuant to 42 U.S. Section 1983 seeking redress for the deprivation, under color of law, of rights secured by the United States Constitution; and pursuant to the laws of the State of California as specified herein.

6.     The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S. Section 1367 over the state law claims, which are so related to the federal claims in this action that they form part of the same case or controversy under Article II of the United States Constitution.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

7.      This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Rules 57 of the Federal Rules of Civil Procedure.

### VENUE/INTRADISTRICT ASSIGNMENT

8.      The claims alleged herein arose in the City and County of San Francisco, State of California. Therefore, venue and assignment are in the United States District Court for the Northern District of California, San Francisco or Oakland Divisions. 28 U.S.C. § 1391(b)(2); Civil L.R. 3-2(d).

### PARTIES

#### A.      Plaintiff:

9.      Plaintiff M.B. is a twenty-year-old African American male, who was nineteen at the time of the alleged incident herein, and who is currently under the jurisdiction of the San Francisco Juvenile Court and in custody at the San Francisco Juvenile Hall.

#### B.      Defendants:

10.      Defendant CITY AND COUNTY OF SAN FRANCISCO is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

11.      Defendant KATHERINE MILLER is, and at all times relevant herein was, the Chief of the San Francisco Juvenile Probation Department and, as such, was the policymaker for Defendant CITY AND COUNTY OF SAN FRANCISCO on matters related to the San Francisco Juvenile Probation Department. At all times herein mentioned, Defendant MILLER was acting under color of law and within the scope of her employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. Defendant MILLER is sued in her official and individual capacities.

12.      Defendant WARREN JOHNSON was at all times relevant herein a deputy probation officer with the San Francisco Juvenile Probation Department for the CITY AND COUNTY OF SAN FRANCISCO, and was acting under color of law and within the scope of his employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. He is sued in his individual capacity.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

13.     Defendant SCOTT KATO was at all times relevant herein a supervising deputy probation officer with the San Francisco Juvenile Probation Department for the CITY AND COUNTY OF SAN FRANCISCO, and was acting under color of law and within the scope of his employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. He is sued in his individual capacity.

14.     Defendant BRYAN THOMASSON was at all times relevant herein a supervising deputy probation officer with the San Francisco Juvenile Probation Department for the CITY AND COUNTY OF SAN FRANCISCO, and was acting under color of law and within the scope of his employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. He is sued in his individual capacity.

15.     Defendant NIGEL HICKS was at all times relevant herein a deputy probation officer with the San Francisco Juvenile Probation Department for the CITY AND COUNTY OF SAN FRANCISCO, and was acting under color of law and within the scope of his employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. He is sued in his individual capacity.

16.     Defendant DOES 1 through 30 are persons or entities whose true names and capacities are presently unknown to Plaintiff, who therefore sue these Defendants by fictitious names. Each of the DOE Defendants was an agent or employee of one or more of the named Defendants, and was acting within the course and scope of said agency or employment and under color of state law. Each of the DOE Defendants are legally responsible in some manner for the occurrences herein alleged. DOES 26-30 are high-ranking and/or policymaking officials within the San Francisco Juvenile Probation Department. All allegations in this Complaint that refer to the named Defendants refer in like manner to those Defendants identified as DOES 1 through 30, inclusive. Plaintiff will amend this Complaint to allege the true names and capacities of the DOE Defendants when they have been ascertained.

## ADMINISTRATIVE PREREQUISITIES

17.     Plaintiff filed a claim with the City and County of San Francisco on June 16, 2023. The City and County of San Francisco rejected Plaintiff's claim on July 19, 2023. Plaintiff

-4-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

has exhausted all administrative remedies pursuant to California Government Code Section 910. A true copy of M.B.'s claim and rejection from the City and County of San Francisco is attached hereto as Exhibit 1.

## FACTUAL AND STATUTORY BACKGROUND

### A. California's Legal and Policy Framework for Solitary or Room Confinement for Youths in Custody in Juvenile Halls

18. The purpose of California's juvenile court system is to further the rehabilitation of the young people under its jurisdiction. Cal. Welf. & Inst. Code § 202; *In re Aline D.*, 14 Cal. 3d 557, 567 (1975).

19. California Welfare and Institutions Code section 203 requires that an order for juvenile court wardship shall not be deemed a conviction of a crime for any purpose, and juvenile court proceedings shall not be deemed criminal proceedings.

20. California Welfare and Institutions Code section 851 requires that juvenile halls not be deemed to be, nor be treated as, penal institutions and that juvenile halls be safe and supportive homelike environments.

21. California law prohibits the use of room confinement in juvenile facilities for purposes of punishment, coercion, convenience, or retaliation by staff. Cal. Welf. & Inst. Code § 208.3(b)(2).

22. California laws and regulations also strictly limit the permissible use of solitary confinement for youth in juvenile facilities. Specifically, Section 208.3 of the California Welfare and Institutions Code sets forth when and how a youth may be placed in "room confinement," defined as the placement of a youth "in a locked sleeping room or cell with minimal or no contact with persons other than correctional facility staff and attorneys." Cal. Welf. & Inst. Code § 208.3(a)(3).

23. California Welfare and Institutions Code section 208.3 and California Code of Regulations, title 15, section 1354.5 directs that room confinement shall not be used before other less restrictive options have been attempted and exhausted unless attempting those options poses a threat to the safety and security of a youth or staff.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

24. The law further prohibits the use of room confinement "to the extent that it compromises the mental and physical health" of the youth. Cal. Welf. & Inst. Code § 208.3(b)(3).

25. Even in a situation in which the law permits room confinement, there are significant legal restrictions on its use. For example, room confinement is permitted only for a period of *up to four hours*. Cal. Welf. & Inst. Code § 208.3(c) (emphasis added). At the four-hour mark, the youth must either be returned to the general facility population, or the staff must do all of the following: 1) document the reason for the confinement and the basis for an extension, the date and time the confinement started; 2) develop an individualized plan for reintegration into the general population; and 3) obtain documented authorization by the facility superintendent or their designee every four hours thereafter. Cal. Welf. & Inst. Code § 208.3(d).

26. California regulations for juvenile facilities also impose limits on use of solitary confinement for incarcerated youth. *See generally*, California Code of Regulations, Title 15. Crime Prevention and Corrections, Division 1. Board of State and Community Corrections, Chapter 1. Board of State and Community Corrections, Subchapter 5, Minimum Standards for Juvenile Facilities.

27. California Code of Regulations, title 15, section 1354.5 requires that facility administrators develop and implement written policies and procedures regarding room confinement that are consistent with California Welfare and Institutions Code section 208.3. California Code of Regulations, title 15, section 1370 requires that education be provided to all youth regardless of separation status, including room confinement, except when providing education poses an immediate threat to the safety of self or others.

28. California Code of Regulations, title 15, section 1361 requires that the facility administrator develop and implement written policies and procedures whereby any youth may appeal and have resolved grievances relating to any condition of confinement, including but not limited to health care services, classification decisions, program participation, telephone, mail or visiting procedures, food, clothing, bedding, mistreatment, harassment or violations of the nondiscrimination policy.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

29.     California Code of Regulations, title 15, section 1371 requires the facility administrator to develop and implement written policies and procedures for programs, recreation, and exercise for all youth. The intent is to minimize the amount of time youth are in their rooms or their bed area. Further, juvenile facilities shall provide the opportunity for programs, recreation, and exercise a minimum of three hours a day during the week and five hours a day each Saturday, Sunday or other non-school days, of which one hour shall be an outdoor activity, weather permitting.

30.     California Code of Regulations, title 15, section 1390 requires the facility administrator to develop and implement written policies and procedures for the discipline of youth that shall promote acceptable behavior; including the use of positive behavior interventions and supports. Discipline shall be imposed at the least restrictive level which promotes the desired behavior and shall not include corporal punishment, group punishment, physical or psychological degradation. Deprivation of the following is not permitted:

    a.   bed and bedding;

    b.    daily shower, access to drinking fountain, toilet and personal hygiene items, and clean clothing;

    c.   full nutrition;

    d.   contact with parent or attorney;

    e.   exercise;

    f.   medical services and counseling;

    g.   religious services;

    h.   clean and sanitary living conditions;

    i.   the right to send and receive mail;

    j.   education; and,

    k.   rehabilitative programming.

31.     California Code of Regulations, title 15, section 1390 requires the facility administrator to develop and implement written policies and procedures for the administration of discipline which shall include, but not be limited to, designation of personnel authorized to

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

impose discipline for violation of rules, prohibiting discipline to be delegated to any youth, definition of major and minor rule violations and their consequences, and due process requirements, trauma-informed approaches and positive behavior interventions, written notice of violation prior to a hearing, hearing by a person who is not a party to the incident, opportunity for the youth to be heard, present evidence and testimony, provision for youth to be assisted by staff in the hearing process, provision for administrative review.

**B.    Unlawful Restriction to Solitary or Room Confinement of Plaintiff M.B.**

32.    M.B. is a twenty-year-old African American currently confined in San Francisco's juvenile hall, under the custodial authority of the San Francisco Juvenile Probation Department (JPD) pursuant to California Welfare and Institutions Code section 875.

33.    On February 13, 2024, Judge Roger Chan of the Superior Court of San Francisco, Juvenile Division granted Plaintiff's petition under Welfare and Institutions Code § 827 to use information contained in his confidential juvenile case file for the purposes of vindicating his civil rights in this case before us.

34.    On Wednesday, December 21, 2022, M.B. was taken off-site of the San Francisco juvenile hall to attend a medical appointment. While off-site, Juvenile Probation Department Officer Warren Johnson searched M.B.'s cell, assisted by Officer Nigel Hicks and Supervising Officers Bryan Thomasson and Scott Kato.

35.    The Probation Officers found items they considered "major contraband," consisting of a cell phone, a portable charger, and charging cords, in M.B.'s cell.

36.    Supervisor Thomasson, together with Officer Hicks, determined that M.B. would be placed under "Room-time separation," starting at 3:00 p.m. on December 21, 2022, and ending on December 24, 2022, at 11:00 a.m. According to the incident report prepared by Supervisor Thomasson and witnessed by Officer Hicks, Supervisor Thomasson personally authorized the room confinement as the "Officer of the Day" and unit 7 manager. The incident report states that the basis for the room confinement was the "seriousness of the situation" and

M.B.'s refusal to answer questions about the contraband. A true copy of Officer Thomasson's incident report is attached hereto as Exhibit 2.

37.    When M.B. returned from his medical appointment, he was told that the Probation Officers found "major contraband" in his cell. M.B. was secured and escorted to a new cell and placed on solitary confinement. Officer Hicks noted in the unit logbook that M.B. would remain in the new cell until further notice and was not to be returned to his original cell without "Officer of the Day" approval. A true copy of M.B.'s unit logbook regarding the relevant time period is attached hereto as Exhibit 3.

38.    The next day, on Thursday, December 22, 2022, Officer Johnson questioned M.B. about the contraband. Officer Johnson noted in the unit logbook that M.B. was advised that his electronic privileges had been revoked until further notice, and that M.B. would be "provided with a rec schedule for AM & PM shifts (All Meals in Room) (1 Hour Rec in AM) and (1 Hour Rec in PM)."

39.    The solitary confinement of M.B. lasted from the evening of Wednesday, December 21 to 11:00 a.m. on Saturday, December 24, 2022 (approximately 65-70 hours). Officer Johnson documented the solitary or room confinement of M.B. using the Juvenile Probation Department's "Room Confinement Checklist." This checklist prompts staff to provide: "Explanation of safety concern. Describe interventions utilized prior to Room Confinement." It also requires that the form be signed by both the "Counselor" and "Supervising Counselor" with time and date. In the "Room Confinement Checklist," Officer Johnson stated that M.B. was "given a separate schedule" while staff were investigating the contraband to ensure M.B.'s "safety." The checklist does not specify any threat to M.B.'s safety, nor does it state what interventions were utilized prior to room confinement. Officer Johnson signed the form as the responsible "Counselor," but did not provide a date or time with his signature. The signature line for the "Senior Counselor" is blank. A true copy of Officer Johnson's Room Confinement Procedure Checklists are attached as Exhibit 4.

40.    Over the course of M.B.'s solitary confinement, numerous employees of the Juvenile Probation Department participated in, consented to, or approved of M.B.'s isolation,

COOPERS LLP
TRIAL LAWYERS

including Defendant Officers Johnson, Hicks, Thomasson, and Kato, as well as Officers Carr, Ma, Penney, Chay, and Winston. These officers served a shift in M.B.'s unit, directly enforced M.B.'s solitary or room confinement, and/or supervised imposition of solitary or room confinement of M.B. For example, Officer Ma was responsible for monitoring M.B. on December 23, 2022, and noted in M.B.'s case notes that M.B. "was in his room throughout most of the AM shift, due to protocols." A true copy of Plaintiff M.B.'s case notes for the relevant time period are attached as Exhibit 5.

41.    Throughout the solitary or room confinement of M.B., Officer Johnson continued to document the confinement using the Juvenile Probation Department's "Room Confinement Checklist." However, the checklist fields in these documents were left almost completely blank. Specifically, the checklist requires staff to apply criteria for determining "imminent risk to safety of youth or staff" at 30-minute increments in the first hour of confinement, and 15-minute increments thereafter. According to the checklist, if none of the criteria for room confinement are checked, staff must notify a senior officer of the intent to release the youth from room confinement. The checklist must be signed and dated by the staff person imposing the room confinement, and by the supervisor approving or denying the room confinement. According to the checklist, if the confinement lasts for two hours based on continued imminent risk to safety of youth or staff, the staff must notify the facility's behavioral health clinicians to help develop a "Reintegration and Safety Plan."

42.    In the *eleven checklists* completed by Officer Johnson from December 21 to December 24, 2022, *none of the criteria for justifying room confinement are checked*. The forms have time notations and signatures from Officer Johnson, and they repeat the identical justification for the room confinement: "Detainee in security assessment pending investigation of major contraband found in detainee's room." The signature lines for the Senior Counselor's approval are blank. (See Exhibit 4).

43.    M.B. was not released from solitary confinement until Saturday, December 24, 2022, at approximately 11:00 a.m. This release date was planned ahead by the Officers—on December 23 at approximately 4:00 p.m., Officer Johnson made a note in the unit logbook that

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

M.B. was scheduled to "rejoin full program on 12/24/2022 11:00AM per OD Thomasson." On the follow day, Officer Johnson made another notation in the unit logbook that M.B. was "back into full program starting at 11:00AM 12/24/22 Per OD Thomasson."

44.    According to Supervisor Thomasson's incident report (dated December 21, 2022), Supervisor Thomasson ended M.B.'s isolation when he felt it was safe for M.B. to return to the unit. However, upon M.B.'s release from solitary confinement, he was returned into general juvenile hall programing. Apart from the three-day solitary confinement of M.B., the Probation Officers took no protective steps regarding M.B.'s safety, nor did they put any special procedures in place upon M.B.'s return to suggest there were ever any actual safety concerns for M.B. There is no indication that behavioral health clinicians were notified or that a reintegration plan was ever developed.

45.    While in solitary confinement, M.B. was only allowed out of his cell for recreation twice per day for a total of two hours per day, and only while the other youth were in their cells, resulting in total isolation from his peers. His meals were served in his cell, and he was not allowed to interact with any other youth on the unit.

46.    While in solitary confinement, M.B. was confined for approximately twenty-two hours per day to a small cell with the only natural light coming through a frosted, narrow window.

47.    M.B. was not informed at any point when the solitary confinement would end. M.B. felt stress, anxiety, despair and stated to the Probation Officers that this solitary confinement was affecting his mental health.

48.    During his solitary confinement, M.B. told the Probation Officers that he was not a risk of harm to his peers or to himself and hoped that his rights were not being violated as a form of punishment. In addition, M.B. submitted a formal written grievance while he was being held in solitary confinement in which he reiterated that he was not a risk of harm to his peers or to himself and hoped that his rights were not being violated as a form of punishment. In his grievance, he requested that the issue be resolved immediately and that he be able to speak to

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

Juvenile Probation Department Chief Miller. A true copy of M.B.'s grievance is attached as Exhibit 6.

49.    The Juvenile Probation Department did not respond to M.B.'s grievance. To the present date, the Juvenile Probation Department has never responded to M.B.'s grievance and has never provided him with his right to appeal any response to his grievance. M.B. filed a second grievance relating to his solitary confinement and the failures of the prior grievance process. M.B. did not ever receive a response to that grievance, nor has he been provided with any right to appeal.

### C. **The Harm of Solitary Confinement to Developing Adolescents:**

50.    California's laws restricting room confinement went into effect in 2017, and, as the bill's legislative record shows, these protections were enacted to protect youth from the serious harms that result from solitary confinement.[1]

51.    The World Health Organization (WHO) has found that solitary confinement has a range of negative psychological and physiological effects, including anxiety, depression, anger, and increased rates of self-harm and suicide, as well as gastro-intestinal problems, insomnia, and poor appetite.[2] According to the WHO, research has shown that uncertainty about the length of the isolation promotes feelings of helplessness and can exacerbate the harms of the isolation.[3]

52.    Adolescents are particularly vulnerable to the harmful impact of solitary confinement. As recently stated by the United States Department of Justice: "It is now widely recognized within the medical, psychiatric, and correctional communities that isolation inflicts

---

[1] S. COMM. ON PUBLIC SAFETY, BILL ANALYSIS S.B. 143, at 5, *available at:* https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201520160SB1143#. ("Long-term isolation has not been shown to have any rehabilitative or treatment value, and the United Nations has called upon all member countries to ban its use completely on minors. It is a practice that endangers mental health and increases risk of suicide, and is often used as a method to control a correctional environment, and not for any rehabilitative purpose. It does not properly address disciplinary issues and more often, it increases these behaviors in youth, especially those with mental health conditions.")
[2] World Health Organization. (2014). Prisons and Health, p. 28, *available at:* https://iris.who.int/bitstream/handle/10665/128603/9789289050593-eng.pdf?sequence=3.
[3] *Id.*

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

particular and serious harms on children because of their developmental immaturity, brain development, and lack of effective coping mechanisms."[4]

### D. National Standards Regarding Solitary Confinement of Youth:

53.    Over the course of the past decade, the scientific evidence demonstrating the harms of isolation has generated a consensus in the field that solitary confinement is inappropriate in juvenile facilities.

54.    In 2012, the American Academy of Child & Adolescent Psychiatry issued a statement opposing the use of solitary confinement in correctional facilities for juveniles.[5] The American Medical Association stated its opposition to solitary confinement in juvenile facilities 2014.[6] In 2015, Council of Juvenile Correctional Administrators published a toolkit on reducing isolation in juvenile facilities,[7] and the next year the National Commission on Correctional Health Care called for the end to solitary confinement of youth.[8]

55.    This growing momentum against the use of solitary confinement for youth led to congressional action through the First Step Act, passed in 2018. This legislation prohibits the isolation of youth in federal facilities "for discipline, punishment, retaliation, or any reason other than as a temporary response to a covered juvenile's behavior [which] poses a serious and immediate risk of physical harm to any individual, including the covered juvenile." 18 U.S.C. §

---

[4] U.S. Statement of Interest at 5-6, Alex A. et al. v. Edwards et al., Case No. 3:22-cv-00573-SDD-RLB (M.D. LA 2023), *available at*: https://www.aclu.org/wpcontent/uploads/2022/09/Alex-A.-v.-Edwards-Department-of-Justice-Statement-of-Interest.pdf.

[5] Policy Statement, Am. Acad. of Child & Adolescent Psychiatry, Solitary Confinement of Juvenile Offenders (Apr. 2012), *available at*: https://www.aacap.org/aacap/policy_statements/2012/solitary_confinement_of_juvenile_offenders.aspx.

[6] Policy Statement, Am. Med. Ass'n, Solitary Confinement of Juveniles in Legal Custody (Nov. 2014), https://policysearch.amaassn.org/policyfinder/detail/youth%20solitary%20confinement?uri=%2FAMADoc%2FHOD.xml-0-5016.xml.

[7] Council of Juvenile Correctional Administrators. (2015). Toolkit: Reducing the Use of Isolation, *available at*: https://ojjdp.ojp.gov/library/publications/council-juvenile-correctional-administrators-toolkit-reducing-use-isolation.

[8] Nat'l Comm'n on Correctional Health Care, Position Statement, Solitary Confinement (Isolation) (Apr. 2016), *available at*: https://www.ncchc.org/wp-content/uploads/Solitary-Confinement-Isolation.pdf.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

5043(b)(1). Further, no juvenile in federal custody may be kept in isolation for longer than three hours under any circumstances. 18 U.S.C. § 5043(b)(2)(B).

56. Today, and at the time of the incident in this case, the national standards for juvenile facilities, including those promulgated by the Annie E. Casey Foundation's Juvenile Detention Alternatives Initiative, Council of Juvenile Correctional Administrators, National Partnership for Juvenile Services, and PbS Learning Institute, limit the use of isolation in juvenile facilities to the brief period required for de-escalation, for example when there is a serious and imminent risk of harm.[9]

57. In 2015, Disability Rights California (DRC), California's designated disability rights Protection and Advocacy agency, issued a report to the San Francisco Juvenile Probation Department.[10] This report specifically identified San Francisco's abuse of room confinement and called on the Juvenile Probation Department to align its practices with the Annie E. Casey Foundation's Juvenile Detention Alternatives Initiative.[11] Among the problematic practices cited in DRC's report were the placement of youth in room confinement as punishment, including the use of room confinement for "major misbehavior" for a period of up to three days.[12]

**E.  San Francisco Juvenile Probation Department's policy, practice, custom, and/or training caused violations of Plaintiff's rights:**

58. Upon information and belief and thereupon alleged, Defendants acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the San Francsico Juvenile Probation Department of unlawfully and without legal basis restricting

---

[9] *See* Juv. Det. Alts. Initiative, *Juvenile Detention Facility Assessment Standards Instrument: 2014 Update* (Dec. 2014), *available at*: http://www.cclp.org/wp-content/uploads/2016/06/JDAI-Detention-Facility-Assessment-Standards.pdf; Council of Juv. Corr. Adm'rs, *Council of Juvenile Correctional Administrators Toolkit: Reducing the Use of Isolation* (Mar. 2015), *available at*: https://nicic.gov/resources/nic-library/all-library-items/council-juvenile-correctional-administratorstoolkit; Position Statement, Nat'l P'ship for Juv. Servs., Use of Isolation (Oct. 20, 2014), *available at*: https://irp.cdn-website.com/45a58767/files/uploaded/2014%20-%20Use%20of%20Isolation.pdf; PBS LEARNING INST., REDUCING ISOLATION AND ROOM CONFINEMENT 2 (2012).
[10] Disability Rights California, "Report on San Francisco Youth Guidance Center," Feb. 23, 2015, pp. 3-8, *available at*: https://www.disabilityrightsca.org/system/files/fileattachments/702901_0.pdf.
[11] *Id.*
[12] *Id.* at 3-4.

-14-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

juveniles to solitary or room confinement. Defendants' widespread and/or longstanding practice or custom of the unlawful use of room confinement, including for purposes of punishment, was documented in the report published by Disability Rights California in 2015.[13]

59.     The unlawful use of solitary or room confinement of Plaintiff M.B. was imposed pursuant to an accepted, widespread and longstanding custom and practice of the Juvenile Probation Department. It was continued over multiple days with the approval, ratification, acquiescence, and/or tolerance of Defendants City and County of San Francisco, Defendant Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30. The violation of Plaintiff's rights was maintained over numerous shift changes and with the participation of at least nine employees of the Juvenile Probation Department staff, including Officers Johnson, Hicks, Thomasson, Kato, Carr, Ma, Penney, Chay, and Winston. Defendants Chief Miller, Supervisors Kato and Thomasson, DOES 1-30 and employees of the Juvenile Probation Department had numerous opportunities to disapprove of, intervene against, or otherwise end Plaintiff's unlawful solitary or room confinement and failed to do so.

60.     Upon information and belief and thereupon alleged, Defendants City and County of San Francisco, Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 failed to investigate and/or respond to M.B.'s multiple grievances related to his unlawful solitary or room confinement because it is an accepted, widespread and longstanding custom and practice of the Juvenile Probation Department. M.B. filed a grievance during his solitary or room confinement, requesting to speak to Chief Miller. Per Juvenile Probation Department policy, signed by Chief Miller, when a grievance is received by staff, a copy must be given to the director of the juvenile hall. By law, the juvenile hall director is appointed by the Probation Chief, and the juvenile hall is under the Probation Chief's "management and control." Cal. Welf. & Inst. Code §§ 852, 854. Per Juvenile Probation Department policy, Defendants City and County of San Francisco, Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 were responsible for investigating

[13] Due to the strict confidentiality of California's juvenile delinquency system, as codified in Welfare and Institutions Code section 827, Plaintiff must rely at this early stage of the litigation on the investigation of Disability Rights California for evidence of repeated violations.

-15-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

and responding to M.B.'s grievance immediately because it related to the health and safety of M.B. Yet, they failed to do so because M.B.'s solitary or room confinement was an accepted, widespread, and longstanding custom and practice of the Juvenile Probation Department.

61.    Upon information and belief and thereupon alleged, Defendants Johnson, Kato, Thomasson, and Hicks were not subjected to any personnel investigation or discipline for their use of solitary or room confinement against M.B. because the unlawful use of solitary or room confinement, including for the purposes of punishment, is an accepted, widespread and longstanding custom and practice of the Juvenile Probation Department and Defendants Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 approved of and/or ratified the unlawful solitary or room confinement of M.B.

62.    Upon information and belief and thereupon alleged, San Francisco Juvenile Probation Department's official policy or widespread or longstanding practice or custom caused the deprivation of the Plaintiff M.B.'s rights, as described in this complaint, by the Defendants Chief Miller, Johnson, Kato, Thomasson, Hicks, and DOES 1-30; that is the San Francisco Juvenile Probation Department's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

63.    Upon information and belief and thereupon alleged, the acts of Defendants Chief Miller, supervisors Kato and Thomasson, and DOES 26-30 of the San Francisco Juvenile Probation Department, deprived the Plaintiff of his particular rights under the United States Constitution and the laws of California.

64.    Upon information and belief and thereupon alleged, when Defendants Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 engaged in these acts, they were acting as a final policymaker for the San Francisco Juvenile Probation Department and the acts of Defendants Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 caused the deprivation of Plaintiff's rights; that is, Defendants Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30's acts were so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

-16-

65.    Upon information and belief and thereupon alleged, Defendants Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 had final policymaking authority for San Francisco Juvenile Probation Department concerning the acts or failures to act of the Defendants Johnson, Kato, Thomasson, Hicks, and DOES 1-25.

66.    Defendants Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 ratified the Defendants Johnson, Kato, Thomasson, Hicks, and DOES' acts or failures to act, that is, Defendants Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 knew of and specifically made a deliberate choice to approve these Defendants' acts or failure to act and the basis for it.

67.    The training and supervision policies of San Francisco Juvenile Probation Department were not adequate to prevent the violations of law by its employees. The policies were also not adequate to train and supervise its employees in handling the usual and recurring situations with which they must deal, like the lawful use of solitary or room confinement and legal basis to continue solitary or room confinement.

68.    With knowledge of the widespread and longstanding practice or custom of the Juvenile Probation Department, as documented by the report of Disability Rights California, Defendants City and County of San Francisco, Defendant Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 failed to prevent the unlawful use of solitary or room confinement by establishing insufficient departmental and/or supervisory procedures for use of room confinement, such as "checklist" documents that employees are not actually required to complete and that supervisors do not review. Defendants City and County of San Francisco, Defendant Chief Miller, Supervisors Kato and Thomasson, and DOES 26-30 also failed to prevent the unlawful use of solitary or room confinement by failing to train employees regarding the lawful use of solitary or room confinement, when it was known that the Juvenile Probation Department had maintained unlawful solitary or room confinement practices in the past.

69.    The Defendants, City and County of San Francisco, Chief Miller, Supervisors Thomasson and Kato, and DOES 26-30 were deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its employees, knew of the obvious

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

consequences of its failure to train and supervise its employees adequately and the failure of the San Francsico Juvenile Probation Department to prevent violations of law by its employees and to provide adequate training and supervision, causing the deprivation of Plaintiff's rights by the Defendants; that is the Defendant's failure to prevent violations of law involving solitary or room confinement of juveniles and to train and supervise the Defendants played a substantial part in bringing about and/or actually caused the injury or damage to the Plaintiff.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983
**Violation of substantive due process in violation of the Fourteenth Amendment
(By Plaintiff M.B. Against Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30)**

70.     Plaintiff incorporates by reference all of the above as though fully set forth herein.

71.     By the actions and omissions described above, Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, individually and/or while acting in concert with one another, did act under color of state law to violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution by restricting Plaintiff to solitary or room confinement when there was no legal basis or legitimate government objective served by the solitary confinement. The use by said Defendants Johnson, Hicks, Kato, Thomasson, and DOES1-30, of solitary confinement was also not rationally related to any legitimate government object and/or was excessive to that purpose. Said Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, also continued to restrict Plaintiff to solitary or room confinement after it was known or should have been known that solitary or room confinement of M.B. was unlawful and/or that he was entitled to release from solitary or room confinement.

72.     The unlawful solitary or room confinement of Plaintiff M.B. was done consciously and with deliberate indifference to Plaintiff M.B.'s constitutional right to liberty and—as a youth confined pursuant to California's rehabilitative juvenile court system—with deliberate indifference to Plaintiff M.B.'s constitutional right to be free from punishment.

-18-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30 imposed solitary confinement on Plaintiff as punishment, without a legitimate government objective and/or in excess of any legitimate government objective. Defendants' conduct, including their failure to comply with California law regarding solitary or room confinement at juvenile facilities including, but not limited to, Welfare and Institutions Code section 208.3, caused Plaintiff M.B. to be confined to a cell, in isolation, for multiple days without a lawful basis, which shocks the conscience. Such conduct deprived Plaintiff M.B. of his liberty rights and rights to be free from punishment as guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

73.     Defendants Kato, Thomasson, and DOES 26-30 further caused the violation of M.B.'s rights under the Due Process Clause of the Fourteenth Amendment in their capacities as supervisors of subordinate officers, including Defendants Johnson and Hicks. Defendants Kato, Thomasson, and DOES 26-30 directed subordinate officers of the Juvenile Probation Department, including Defendants Johnson and Hicks, to impose unlawful solitary or room confinement. Defendants Kato, Thomasson, and DOES 26-30 also set into motion the unlawful solitary or room confinement of M.B., and/or knowingly refused to terminate the unlawful solitary or room confinement of M.B., and/or failed to prevent their subordinates from imposing solitary room confinement, when they knew or should have known that subordinate officers were imposing solitary or room confinement without a lawful basis and in a manner that violated M.B.'s rights under the Fourteenth Amendment. Further, Defendants Kato, Thomasson, and DOES 26-30 failed to properly train and/or supervise subordinate officers regarding the lawful use of solitary confinement, when they knew or should have known that this failure to train and/or supervise would cause, and did cause, said subordinates to violate M.B.'s rights.

74.     As a result of the violation of his rights under the Fourteenth Amendment to the United States Constitution by said Defendants, Plaintiff M.B. suffered the injuries and/or damages as alleged in this Complaint.

75.     Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, subjected Plaintiff M.B. to their wrongful conduct, depriving Plaintiff M.B. of rights described herein,

-19-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

knowingly, maliciously, fraudulently, and with conscious and reckless disregard for whether the rights of Plaintiff M.B. would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

76.    Youth are protected from periods of punitive isolation under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Defendants' policies, practices, acts and omissions subjected Plaintiff M.B. to prolonged, excessive, unjustified, punitive isolation and thereby deprived him of his rights substantive due process rights.

77.    Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983**
**Violation of Equal Protection Clause – racial discrimination – in violation of the Fourteenth Amendment**
**(By Plaintiff M.B. Against Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30)**

78.    Plaintiff incorporates by reference all of the above as though fully set forth herein.

79.    Plaintiff M.B. is informed and believes and thereupon alleges that Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, intentionally discriminated against Plaintiff M.B. based on the color of his skin. Specifically, Plaintiff M.B. is informed and believes and thereupon alleges that Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30 would not have harassed or restricted Plaintiff to solitary or room confinement if he were white. In particular, Plaintiff M.B. is informed and believes and thereupon alleges that Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30 engaged in biased enforcement or racial profiling, which is prohibited by the Fourteenth Amendment's Equal Protection Clause and by California Penal Code Section 13519.4.

80.    Defendants Kato, Thomasson, and DOES 26-30 further caused the violation of M.B.'s rights under the Equal Protection Clause of the Fourteenth Amendment in their capacities as supervisors of subordinate officers, including Defendants Johnson and Hicks. Defendants Kato, Thomasson, and DOES 26-30 directed subordinate officers of the Juvenile Probation Department, including Defendants Johnson and Hicks, to intentionally discriminate against Plaintiff based on the color of his skin when they imposed unlawful solitary or room confinement. Defendants Kato, Thomasson, and DOES 26-30 also set into motion the unlawful solitary or room confinement of M.B., and/or knowingly refused to terminate the unlawful solitary or room confinement of M.B., and/or failed to prevent their subordinates from imposing solitary room confinement, when they knew or should have known that subordinate officers were imposing solitary or room confinement on a racially discriminatory basis and in a manner that violated M.B.'s rights under the Fourteenth Amendment. Further, Defendants Kato, Thomasson, and DOES 26-30 failed to properly train and/or supervise subordinate officers regarding the lawful use of solitary confinement, when they knew or should have known that this failure to train and/or supervise would cause, and did cause, said subordinates to violate M.B.'s rights.

81.    As a result of the violation of his rights under the Fourteenth Amendment to the United States Constitution by said Defendants, Plaintiff M.B. suffered the injuries and/or damages as alleged in this Complaint.

82.    Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, subjected Plaintiff M.B. to their wrongful conduct, depriving Plaintiff M.B. of rights described herein, knowingly, maliciously, fraudulently, and with conscious and reckless disregard for whether the rights of Plaintiff M.B. would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

83.    Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

//

### THIRD CAUSE OF ACTION

**42 U.S.C. § 1983**
**Violation of Equal Protection Clause – class of one different treatment – in violation of the Fourteenth Amendment**
**(By Plaintiff M.B. Against Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30)**

84.     Plaintiff incorporates by reference all of the above as though fully set forth herein.

85.     Plaintiff M.B. is informed and believes and thereupon alleges that Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, intentionally treated Plaintiff M.B. differently than other similarly situated detainees being held in custody at the San Francisco Juvenile Hall and without a rational basis for such intentional different treatment. Specifically, Plaintiff M.B. is informed and believes and thereupon alleges that the actions of Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, in imposing solitary confinement on Plaintiff as set forth in greater detail above were unique in that Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30 did not take similar actions towards any other detainee.

86.     Defendants Kato, Thomasson, and DOES 26-30 further caused the violation of M.B.'s rights under the Equal Protection Clause of the Fourteenth Amendment in their capacities as supervisors of subordinate officers, including Defendants Johnson and Hicks. Defendants Kato, Thomasson, and DOES 26-30 directed subordinate officers of the Juvenile Probation Department, including Defendants Johnson and Hicks, to impose unlawful solitary or room confinement. Defendants Kato, Thomasson, and DOES 26-30 also set into motion the unlawful solitary or room confinement of M.B., and/or knowingly refused to terminate the unlawful solitary or room confinement of M.B., and/or failed to prevent their subordinates from imposing solitary room confinement, when they knew or should have known that subordinate officers were imposing solitary or room confinement pursuant to intentional differential treatment and

without a rational basis, and in a manner that violated M.B.'s rights under the Fourteenth Amendment. Further, Defendants Kato, Thomasson, and DOES 26-30 failed to properly train and/or supervise subordinate officers regarding the lawful use of solitary confinement, when they knew or should have known that this failure to train and/or supervise would cause, and did cause, said subordinates to violate M.B.'s rights.

87.     As a result of the violation of his rights under the Fourteenth Amendment to the United States Constitution by said Defendants, Plaintiff M.B. suffered the injuries and/or damages as alleged in this Complaint.

88.     Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, subjected Plaintiff M.B. to their wrongful conduct, depriving Plaintiff M.B. of rights described herein, knowingly, maliciously, fraudulently, and with conscious and reckless disregard for whether the rights of Plaintiff M.B. would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

89.     Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION

**42 U.S.C. § 1983**
**Violation of procedural due process in violation of the Fourteenth Amendment**
**(By Plaintiff M.B. Against Defendants Johnson, Hicks, Kato, Thomasson and DOES 1-30)**

90.     Plaintiff incorporates by reference all of the above as though fully set forth herein.

91.     In doing the acts complained of in this Complaint, Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, individually and/or while acting in concert with one another, did act under color of state law to cause Plaintiff M.B. to be restricted to solitary or room confinement when there was no legal basis to detain him or justification. Said Defendants

-23-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

continued to restrict Plaintiff to room confinement after it was known or should have been known that he was entitled to release from room confinement.

92.    California Welfare and Institutions Code section 851 requires that juvenile halls not be deemed to be, nor be treated as, penal institutions and that juvenile halls be safe and supportive homelike environments.

93.    California Welfare and Institutions Code section 208.3 and California Code of Regulations, title 15, section 1354.5 limit the use of solitary or room confinement. Solitary or room confinement may not be used for purposes of punishment, coercion, convenience, or retaliation by staff or to the extent that it compromises the mental and physical health of a youth. Solitary or room confinement shall not be used before other less restrictive options have been attempted and exhausted unless attempting those options poses a threat to the safety and security of a youth or staff. In a circumstance where solitary or room confinement may lawfully be used, after a youth is held up to four hours in solitary or room confinement, staff must either return the youth to the general unit or document the reason for extension, obtain documented authorization by the facility superintendent or designee every four hours thereafter; and develop an individualized plan to reintegrate the youth.

94.    California Code of Regulations, title 15, section 1354.5 requires that facility administrators develop and implement written policies and procedures regarding room confinement that are consistent with California Welfare and Institutions Code section 208.3.

95.    The actions taken against Plaintiff M.B. by Defendants to place him in room confinement violated his right to procedural due process because it deprived him of his Fourteenth Amendment right to liberty and right as a youth under the jurisdiction of the juvenile court to be free from punishment. The room confinement was imposed as punishment or discipline and it was done under conditions that were both prolonged and excessive without due process of law including, but not limited to, restricting him to room confinement without a legitimate government objective, failing to provide notice of the basis for the room confinement, and failing to provide a timely hearing and opportunity to be heard.

-24-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

96.     The actions taken against Plaintiff M.B. by Defendants placing him in room confinement violated his right to procedural due process because it deprived him of his liberty interests established under state law by Welfare and Institutions Code section 208.3 without due process of law, including, but not limited to, restricting him to room confinement as punishment, restricting him to room confinement under conditions that were both prolonged and excessive, restricting him to room confinement in a manner that compromised his mental and physical health, restricting him to room confinement without exhausting less restrictive options, restricting him to room confinement for more than four (4) hours without justification, depriving him of minimum programming and recreation, failing to properly document use of room confinement, failing to provide basis for extension of room confinement, failing to consult medical or mental health staff and/or develop an individualized plan for him during room confinement with goals and objective to reintegrate the him into the general population, failing to timely implement a written policy and procedure addressing the use of room confinement.

97.     Defendants Kato, Thomasson, and DOES 26-30 further caused the violation of M.B.'s procedural due process rights under the Fourteenth Amendment in their capacities as supervisors of subordinate officers, including Defendants Johnson and Hicks. Defendants Kato, Thomasson, and DOES 26-30 directed subordinate officers of the Juvenile Probation Department, including Defendants Johnson and Hicks, to impose unlawful solitary or room confinement without due process of law. Defendants Kato, Thomasson, and DOES 26-30 also set into motion the unlawful solitary or room confinement of M.B. without due process, and/or knowingly refused to terminate the unlawful solitary or room confinement of M.B. without due process, and/or failed to prevent their subordinates from imposing solitary room confinement without due process, when they knew or should have known that subordinate officers were imposing solitary or room confinement without a lawful basis and in a manner that violated M.B.'s procedural due rights under the Fourteenth Amendment. Further, Defendants Kato, Thomasson, and DOES 26-30 failed to properly train and/or supervise subordinate officers regarding the procedural due process requirements for the imposition of solitary confinement,

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

when they knew or should have known that this failure to train and/or supervise would cause, and did cause, said subordinates to violate M.B.'s rights.

98.    Defendants subjected Plaintiff M.B. to their wrongful conduct, depriving Plaintiff M.B. of rights described herein, knowingly, maliciously, fraudulently, and with conscious and reckless disregard for whether the rights of Plaintiff M.B. would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

99.    Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## FIFTH CAUSE OF ACTION

**42 U.S.C. § 1983**
**Unreasonable Seizure in violation of the Fourth Amendment**
**(By Plaintiff M.B. Against Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30)**

100.    Plaintiff incorporates by reference all of the above as though fully set forth herein.

101.    By the actions and omissions described above, the Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, individually and/or while acting in concert with one another, did act under color of state law to cause Plaintiff M.B. to be restricted to solitary or room confinement without a lawful basis and continued to restrict Plaintiff M.B. after it was known or should have been known that he was entitled to be released from confinement.

102.    The unlawful solitary or room confinement of Plaintiff M.B. was unreasonable and without probable cause. Said Defendants failed to follow state law requirements by imposing room confinement without a lawful basis, as punishment, without exhausting less restrictive alternatives, and in a manner that compromised his physical and mental health. Said Defendants continued to impose room confinement in excess of any legitimate objective and after any legal basis for detaining Plaintiff M.B. was extinguished. Subsequent room

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

confinement of Plaintiff M.B. after it was known or should have been known that he should have been released to the general population constituted a new seizure under color of state law by Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, individually and/or while acting in concert with one another. This "re-seizure" was unsupported by probable cause or safety measures and was objectively unreasonable. Such conduct deprived Plaintiff M.B. of his right against unreasonable seizure guaranteed under the Fourth Amendment of the United States Constitution.

103.    Defendants Kato, Thomasson, and DOES 26-30 further caused the violation of M.B.'s rights under the Fourth Amendment in their capacities as supervisors of subordinate officers, including Defendants Johnson and Hicks. Defendants Kato, Thomasson, and DOES 26-30 directed subordinate officers of the Juvenile Probation Department, including Defendants Johnson and Hicks, to impose unlawful solitary or room confinement. Defendants Kato, Thomasson, and DOES 26-30 also set into motion the unlawful solitary or room confinement of M.B., and/or knowingly refused to terminate the unlawful solitary or room confinement of M.B., and/or failed to prevent their subordinates from imposing solitary room confinement, when they knew or should have known that subordinate officers were imposing solitary or room confinement without a lawful basis and in an objectively unreasonable manner that violated M.B.'s rights under the Fourth Amendment. Further, Defendants Kato, Thomasson, and DOES 26-30 failed to properly train and/or supervise subordinate officers regarding the lawful use of solitary confinement, when they knew or should have known that this failure to train and/or supervise would cause, and did cause, said subordinates to violate M.B.'s rights.

104.    As a result of the violation of his rights under the Fourth Amendment of the United States Constitution and Article 1, section 13 of the California Constitution, by said Defendants, Plaintiff M.B. suffered the injuries and/or damages alleged in this Complaint.

105.    Defendants subjected Plaintiff M.B. to their wrongful conduct, depriving Plaintiff M.B. of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions.

Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

106. Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SIXTH CAUSE OF ACTION

**42 U.S.C. § 1983**
**Cruel and Unusual Punishment in violation of the Eighth Amendment**
**(By Plaintiff M.B. Against Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30)**

107. Plaintiff incorporates by reference all of the above as though fully set forth herein.

108. California Welfare and Institutions Code section 851 requires that juvenile halls not be deemed to be, nor be treated as, penal institutions and that juvenile halls be safe and supportive homelike environments.

109. The conduct described herein by Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, acting under the color of state law and in their official duties, violated the rights of Plaintiff M.B. under the Eighth Amendment of the United States Constitution and Article 1, section 17 of the California Constitution. Plaintiff was deprived of his liberty interests and his right to be free from cruel and unusual punishment. It is a duty of a juvenile facility to take reasonable measures to guarantee the safety and support of a detainee. Solitary or room confinement causes severe injury that is cruel and unusual punishment when applied to individuals in juvenile facilities.

110. Defendants restricted Plaintiff M.B. to solitary or room confinement with deliberate indifference and conscious disregard for the risks and harms to Plaintiff M.B.'s health and safety. Defendants were aware of and disregarded the risks and harms caused by the solitary confinement of Plaintiff M.B.

-28-

111. Defendants' failures and violations include, but are not limited to restricting him to room confinement as punishment, restricting him to room confinement under conditions that were both prolonged and excessive, restricting him to room confinement in a manner that compromised his mental and physical health, restricting him to room confinement without exhausting less restrictive options, restricting him to room confinement for more than four (4) hours without justification, depriving him of minimum programming and recreation, failing to properly document use of room confinement, failing to provide basis for extension of room confinement, failing to consult medical or mental health staff and/or develop an individualized plan for him during room confinement with goals and objective to reintegrate the him into the general population, failing to timely implement a written policy and procedure addressing the use of room confinement.

112. Defendants knew, or should have known, that subjecting youths in the custody of a juvenile hall to solitary or room confinement as punishment causes serious emotional, social, psychological, and physical harm.

113. Despite actual knowledge of the obvious risks and harm to Plaintiff at the juvenile hall for being placed in solitary confinement, Defendants disregarded these excessive risks of the health and safety of Plaintiff and continued to place Plaintiff in such isolation.

114. Plaintiff M.B. is informed and believes and thereupon alleges, Defendants' restricting Plaintiff to solitary or room confinement was punishment and caused severe emotional, social, psychological, and physical harms to Plaintiff M.B.

115. Defendants Kato, Thomasson, and DOES 26-30 further caused the violation of M.B.'s rights under the Eighth Amendment in their capacities as supervisors of subordinate officers, including Defendants Johnson and Hicks. Defendants Kato, Thomasson, and DOES 26-30 directed subordinate officers of the Juvenile Probation Department, including Defendants Johnson and Hicks, to impose unlawful solitary or room confinement. Defendants Kato, Thomasson, and DOES 26-30 also set into motion the unlawful solitary or room confinement of M.B., and/or knowingly refused to terminate the unlawful solitary or room confinement of M.B., and/or failed to prevent their subordinates from imposing solitary room confinement, when they

know or should have known that subordinate officers were imposing solitary or room confinement without a lawful basis and in a manner that violated M.B.'s rights under the Eighth Amendment. Further, Defendants Kato, Thomasson, and DOES 26-30 failed to properly train and/or supervise subordinate officers regarding the Eighth Amendment limitations on the use of solitary confinement, when they knew or should have known that this failure to train and/or supervise would cause, and did cause, said subordinates to violate M.B.'s rights.

116.    Defendants subjected Plaintiff M.B. to their wrongful conduct, depriving Plaintiff M.B. of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused, injuries and damages to Plaintiff as set forth above.

117.    Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

**42 U.S.C. Section 1983 – *Monell* and Supervisor Liability**
**(Against Defendants City and County of San Francisco, Chief of San Francisco Juvenile Probation Department Katherine Miller, Officers Kato and Thomasson, and DOES 26-30)**

118.    Plaintiff incorporates by reference all of the above as though fully set forth herein.

119.    The unconstitutional actions and/or omissions of Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, were pursuant to the following customs, policies, practices, and/or procedures of Defendant City and County of San Francisco, Chief of San Francisco Juvenile Probation Department Katherine Miller, Supervising Officers Kato and Thomasson, and DOES 26-30, and were directed, encouraged, allowed and/or ratified by said Defendants as policymaking officials with the City and County of San Francisco and the San Francisco

Juvenile Probation Department. These widespread and/or longstanding customs, policies, practices, and/or procedures include:

    a.    Using solitary confinement for punishment, and/or without a legitimate government objective, and/or in excess of any legitimate objective;

    b.    Using solitary confinement without notice of the reason for solitary or room confinement;

    c.    Using solitary confinement without providing a timely hearing or opportunity to be heard;

    d.    Using solitary confinement without ensuring that it is not being used for an unlawful purpose;

    e.    Using solitary confinement without ensuring that it does not compromise a youth's physical and mental health;

    f.    Using solitary confinement without ensuring that is not used before less restrictive options have been attempted and exhausted, unless attempting those options poses a threat to the safety or security of any minor, ward, or staff;

    g.    Restricting youths to room confinement for more than four (4) hours without justification;

    h.    Using solitary confinement without ensuring that it is properly documented and approved;

    i.    Extending solitary confinement beyond four (4) hours without ensuring that there is a basis for its extension;

    j.    Extending solitary confinement beyond four (4) hours without consulting medical or mental health staff for youths in solitary or room confinement;

    k.    Using solitary confinement without developing an individualized plan for youths during solitary or room confinement with goals and objective to reintegrate the youth into the general population;

    l.    Failure to timely implement a written policy and procedure to ensure the

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

lawful use of room confinement;

m.    Failure to provide sufficient and adequate training, procedures, and/or supervision to ensure applicable laws, regulations, and policies related to solitary or room confinement were understood and followed.

120.    Defendants City and County of San Francisco, Chief Miller, Thomasson, Kato, and DOES 26-30, failed to prevent constitutional violations by Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, and failed to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and/or terminate Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, with deliberate indifference to Plaintiff's constitutional rights.

121.    The unconstitutional actions of Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, were approved, tolerated, acquiesced to and/or ratified by Defendants Chief Miller, Kato, Thomasson, and DOES 26-30 as the policymaking officers for the City and County of San Francisco and the San Francisco Juvenile Probation Department.

122.    The aforementioned customs, policies, practices, and procedures, and the failure to properly screen, hire, train, instruct, monitor, supervise, evaluate, investigate, discipline and terminate, and the unconstitutional approval, ratification and/or toleration of the wrongful conduct of Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, were a moving force and/or proximate cause of the deprivation of Plaintiff's clearly established constitutional rights.

123.    As the supervisors on scene, Defendants Thomasson, Kato, and/or DOES 26-30 had an obligation to ensure that their subordinates, including Defendants Johnson, Hicks, and DOES 1-30 engaged in lawful conduct and refrained from unlawfully imposing solitary confinement and violating Plaintiff's Constitutional rights. As the official charged by law with the management and control of the juvenile hall, Defendant Miller had an obligation to ensure that her subordinates, including Defendants Thomasson, Kato, Johnson, Hicks, and DOES 1-30 engaged in lawful conduct and refrained from unlawfully imposing solitary confinement and violating Plaintiff's Constitutional rights.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

124.    As a direct and proximate result of the conduct of Defendants City and County of San Francisco, Chief Miller, Defendants Thomasson and/or Kato and DOES 26-30, Plaintiff suffered injuries and damages as set forth above.

125.    The conduct of Defendants Chief Katherine Miller, Kato, Thomasson, and DOES 26-30 entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct. No punitive damages are sought against Defendant City and County of San Francisco.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth

## EIGHTH CAUSE OF ACTION

### 42 U.S.C. Section 1981
**(By Plaintiff M.B. Against Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30)**

126.    Plaintiff incorporates by reference all of the above as though fully set forth herein.

127.    In doing the things herein alleged, Defendants intentionally discriminated against Plaintiff because of his race, thereby depriving him of his right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

128.    Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights of Plaintiff would be violated by their acts and/or omissions. Defendants' acts and/or omissions were the moving force behind, and proximately caused injuries and damages to Plaintiff as set forth above.

129.    Defendants' conduct entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California law in an amount sufficient to punish and deter such conduct.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION

### California Civil Code § 52.1 (Bane Act)
**(By Plaintiff M.B. Against All Defendants)**

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

130. Plaintiff incorporates by reference all of the above as though fully set forth herein.

131. By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, intentionally interfered with, or attempted to interfere with, and violated the following civil rights by threats, intimidation, or coercion:

    a.    the rights to substantive and procedural due process, secured by the Due Process clause of the Fourteenth Amendment to the United States Constitution, Article 1, Sections 7 and 13 of the California Constitution, and 42 U.S.C. Section 1983;

    b.    the right to be free from biased enforcement or racial profiling, which is prohibited by the Fourteenth Amendment's Equal Protection Clause and Article I, Section 7 of the California Constitution, and 42 U.S.C. Section 1981;

    c.    the right to be free from unreasonable seizures and detentions without reasonable suspicion, secured by the Fourth Amendment to the United States Constitution and by Article 1, Section 13 of the California Constitution;

    d.    the right to be free from the infliction of cruel and unusual punishment, secured by the Eighth Amendment to the United States Constitution, and Article 1, section 17 of the California Constitution;

    e.    the right to not be punished by solitary or room confinement in a juvenile facility and the right for solitary or room confinement to be used only in conformance with law, secured by California Welfare and Institutions Code section 208.3, California Code of Regulations, title 15, section 1354.5, and California Welfare and Institutions Code section 851.

    f.    the right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, secured by Article 1, Section 1 of the California Constitution;

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

g.    the right to protection from bodily restraint, harm, or personal insult, secured by California Civil Code Section 43;

h.    the right to be free of racial profiling by law enforcement, secured by California Penal Code Section 13519.4.

132.    In doing the things herein alleged, Defendants acted with the particular purpose of depriving Plaintiff M.B. of the enjoyment of the interests protected by the above-listed rights and/or in reckless disregard of these constitutional and statutory rights and guarantees.

133.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth above.

134.    Defendant City and County of San Francisco and San Francisco Juvenile Probation Department are vicariously liable for the acts and omissions of its employees acting in the course and scope of such employment, pursuant to California Government Code Section 815.2.

135.    The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and conducted with a willful and conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages pursuant to California Civil Code Sections 52.1 and 3294. No punitive damages are being sought against Defendant City and County of San Francisco.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## TENTH CAUSE OF ACTION

**California Government Code § 815.6 (Failure to Discharge a Mandatory Duty)**
**(By Plaintiff M.B. Against All Defendants)**

136.    Plaintiff incorporates by reference all of the above as though fully set forth herein.

137.    California Government Code Section 815.6 provides for liability against a public entity when:

a.    The public entity violates a mandatory duty imposed by an enactment.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

      b.      The enactment is designed to protect against the kind of injury complained of by the plaintiff.

      c.      The plaintiff is in the class of persons protected by the enactment.

      d.      The violation proximately caused the injury; and

      e.      The public entity did not exercise reasonable diligence in discharging its duty established by the enactment.

138.    An enactment includes a federal or state constitutional provision, statute, charter provision, ordinance, or properly adopted regulation.

139.    Defendants were under a mandatory duty to comply with the room confinement protections set out in California Welfare and Institutions Code sections 208.3 and 851. California Welfare and Institutions Code section 208.3 and California Code of Regulations, title 15, section 1354.5 limit the use of solitary or room confinement. Solitary or room confinement shall not be used before other less restrictive options have been attempted and exhausted unless attempting those options poses a threat to the safety and security of a youth or staff. Solitary or room confinement may not be used for purposes of punishment, coercion, convenience, or retaliation by staff or to the extent that it compromises the mental and physical health of a youth. Further, after a youth is held up to four hours in solitary or room confinement, staff must either return the youth to the general unit or document the reason for extension, obtain documented authorization by the facility superintendent or designee every four hours thereafter; and develop an individualized plan to reintegrate the youth. California Welfare and Institutions Code section 851 requires that juvenile halls not be deemed to be, nor be treated as, penal institutions and that juvenile halls be safe and supportive homelike environments. Such requirements constitute mandatory duties, enacted by state law, designed to protect youths such as Plaintiff M.B. from unwarranted and unnecessary room confinement and its attendant harms.

140.    Plaintiff M.B. is informed and believes and thereupon alleges that said Defendants, individually and/or while acting in concert with one another, did not exercise due diligence in discharging their mandatory duty to comply with state law on room confinement and release from room confinement. Said Defendants unlawfully used room confinement as a

form of punishment, without exhausting less restrictive alternatives, and to the detriment of Plaintiff's physical and mental health. Said Defendants also unlawfully used room confinement beyond the four-hour limitation and did not comply with their mandatory duties regarding documentation, individualized planning, and supervisor authorization. Defendants did not release Plaintiff M.B. after it was known or should have been known that his room confinement was unlawful.

141.   Defendants were also under a mandatory duty to comply with the juvenile facility regulations set out in Title 15 of the California Code of Regulations. Under California Code of Regulations, title 15, section 1370, Defendants were required to provide educational instruction to Plaintiff, regardless of separation status. Under California Code of Regulations, title 15, section 1371, Defendants were required to provide Plaintiff with programs, recreation, and exercise for a minimum of three hours on weekdays and five hours on weekends or non-school days. Of these hours, Defendants were required to ensure that one hour was provided for an outdoor activity, weather permitting, one hour was provided for unscheduled activities, and one hour was provided for large muscle exercise. Under California Code of Regulations, title 15, section 1390, Defendants were prohibited from imposing discipline that deprived Plaintiff of certain rights, such as the right to full nutrition, exercise, education, and rehabilitative programming.

142.   Plaintiff M.B. is informed and believes and thereupon alleges that said Defendants, individually and/or while acting in concert with one another, did not exercise due diligence in discharging their mandatory duty to comply with juvenile facility regulations. Said Defendants placed Plaintiff in solitary confinement, allowing him to leave his cell for only two hours per day, and depriving Plaintiff of his rights to education, programming, recreation, and exercise. Said Defendants deprived Plaintiff of these rights in violation of their mandatory duty not to take away these rights as a form of discipline.

143.   As a result of said Defendants' violation of their mandatory duties under state law and regulation, Plaintiff M.B. suffered the injuries and/or damages as alleged in this Complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

## ELEVENTH CAUSE OF ACTION

### Negligence
### (By Plaintiff M.B. Against all Defendants)

144.    Plaintiff incorporates by reference all of the above as though fully set forth herein.

145.    The Defendants owed Plaintiff a duty to use reasonable care in connection with the parties' interactions as described herein. In particular, the individual Defendants had a duty to carefully investigate any potential violations, to follow the applicable rules regarding any potential violations, to use care to avoid subjecting Plaintiff to improper solitary or room confinement within his cell, to use care to avoid subjecting Plaintiff to an illegal/improper seizure of Plaintiff in his cell, to use care to avoid subjecting Plaintiff to an illegal/improper retaliation or petition for redress of grievances, to use care to avoid subjecting Plaintiff to deprivation of any of the other rights enumerated herein, and to use reasonable care to avoid engaging in biased enforcement or racial profiling.

146.    In doing the things herein alleged, Defendants breached the applicable duty of care by acting unreasonably, carelessly, negligently and/or recklessly.

147.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as set forth above.

148.    Defendant City and County of San Francisco, San Francisco Juvenile Probation Department, and Juvenile Probation Department Chief Miller are vicariously liable for the acts and omissions of its employees— Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30—acting in the course and scope of such employment, pursuant to California Government Code Section 815.2.

149.    The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff M.B. and deprive him of his rights, or their actions were despicable and conducted with a willful and conscious disregard for Plaintiff's rights and safety,

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

entitling Plaintiff to punitive damages pursuant to California Civil Code Section 3294. No punitive damages are being sought against Defendant City and County of San Francisco.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### TWELTH CAUSE OF ACTION

**False Imprisonment**
**(By Plaintiff M.B. Against All Defendants)**

150. Plaintiff incorporates by reference all of the above as though fully set forth herein.

151. Defendants are liable under California law for false imprisonment when:

a. There is nonconsensual, intentional confinement of a person,

b. Without lawful privilege,

c. For an appreciable period of time, however brief.

152. A jailer can be held liable for false imprisonment if the jailer knew or should have known that the plaintiff's incarceration was unlawful.

153. In doing the acts complained of in this Complaint, Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30, individually and/or while acting in concert with one another, did act within the scope of their employment to cause Plaintiff M.B. to be restricted to room confinement when there was no legal basis and against Plaintiff M.B.'s will. Such room confinement was nonconsensual and intention custodial confinement in the locked facility of San Francisco's juvenile hall. The incarceration lacked lawful privilege because it was done on an unconstitutional basis in violation of the rights to due process and equal protection. The room confinement also lacked lawful privilege because it contradicted state law and was imposed in violation of Plaintiff's rights.

154. Said Defendants continued to restrict Plaintiff M.B. to room confinement after it was known or should have been known that he was entitled to release, and therefore Defendants are liable for the tort of false imprisonment. California Government Code Section 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

155.    Pursuant to Government Code Section 815.2, Defendants City and County of San Francisco, San Francisco Juvenile Probation Department, and Juvenile Probation Department Chief Miller are vicariously liable for the torts of their employees— Defendants Johnson, Hicks, Kato, Thomasson, and DOES 1-30—who were acting within the scope of their employment when they falsely imprisoned Plaintiff M.B.

156.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered injuries and damages as alleged in this Complaint.

157.    The conduct of the individual Defendants was malicious and oppressive in that they intended to harm Plaintiff and deprive him of his rights, or their actions were despicable and conducted with a willful and conscious disregard for Plaintiff's rights and safety, entitling Plaintiff to punitive damages pursuant to California Civil Code Section 3294. No punitive damages are being sought against Defendant City and County of San Francisco.

WHEREFORE, Plaintiff M.B. prays for relief as hereinafter set forth.

### THIRTEENTH CAUSE OF ACTION

*Writ of Mandate (Code of Civil Procedure § 1085)*
*Violation of California Welfare and Institutions Code § 208.3 and*
*California Code of Regulations, Title 15 Sections 1361, 1370, 1371, 1390, 1391*
**(AS TO ALL DEFENDANTS)**

158.    Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein.

159.    Plaintiff M.B. is beneficially interested in the outcome of this matter because he personally endured the harms associated with violations of Defendants' mandatory duties. Additionally, he remains incarcerated within the facility and at risk of suffering future harm if Defendants continue to violate their legal obligations.

160.    There are no plain, speedy and adequate alternative remedies at law to enforce Defendants legal obligations respecting the care and treatment of Plaintiff and other youth confined in their facilities.

-40-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

*Violations of Welfare and Institutions Code Sections 208.3*

161.    California Welfare and Institutions Code Section 208.3 sets forth when and how a youth may be placed in "room confinement," defined by subdivision (a), subparagraph (3) as placement of a youth "in a locked sleeping room or cell with minimal or no contact with persons other than correctional facility staff and attorneys." Section 208.3, subdivision (b), subparagraph (2) prohibits the use of room confinement for punishment. Section 208.3, subdivision (b), subparagraph (1) prohibits the use of room confinement before other, less restrictive, alternatives have been attempted and exhausted, "unless attempting those options poses a threat to the safety or security of any minor, ward, or staff." Section 208.3, subdivision (b), subparagraph (3) prohibits the use of room confinement "to the extent that it compromises the mental and physical health of the minor or ward." In circumstances where room confinement is permissible, Section 208.3, subdivision (c) sets forth a specific process that must be followed and establishes clear time limitations as a part of that process.

162.    Defendants had a mandatory duty to comply with the limitations and procedures set forth in Welfare and Institutions Code Section 208.3. Defendants' use of room confinement against Plaintiff M.B. from December 21 to December 24, 2022 was in violation of their mandatory duties because it was used for an inappropriate purpose, in a manner that compromised his mental and physical health, without attempting, exhausting, or even considering less restrictive alternatives, and without adherence to the process clearly laid out in the law.

*Violation of California Code of Regulations, Title 15 Section 1361*

163.    The California Code of Regulations, Title 15, Section 1361 establishes specific requirements for grievance policies and procedures in juvenile facilities. Among these is the requirement that an initial response be provided within three business days; that the response be provided in writing and include the reasons for the decision; and that the grievance be resolved within ten business days.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

164. Defendants had a mandatory duty to provide a written response to Plaintiff M.B.'s grievance filed on December 21, 2022. They did not provide a response or resolution despite multiple requests.

***Violation of California Code of Regulations, Title 15, Section 1370***

165. Pursuant to California Code of Regulations Title 15, Section 1370, Defendants are, and at all times relevant times were, required to provide Plaintiff with educational instruction, regardless of separation status.

166. Defendants failed to provide educational instruction to Plaintiff M.B. during the time he was in room confinement from December 21 to December 24, 2022 in violation of Section 1370.

***Violation of California Code of Regulations, Title 15, Section 1371***

167. Pursuant to California Code of Regulations Title 15, Section 1371, Defendants are, and at all times relevant times were, required to provide Plaintiff with programs, recreation, and exercise for a minimum of three hours on weekdays and five hours on weekends or non-school days. Defendants also have a mandatory duty to ensure that one hour is provided for an outdoor activity and one hour is provided for large muscle exercise.

168. Defendants failed to meet their mandatory duty under Section 1371 when they did not provide the minimally required programming, recreation, or exercise from December 21 to December 24, 2022. In failing to provide programming, recreation, or exercise on those days, Defendants also failed to ensure that Plaintiff M.B. was provided with one hour for an outdoor activity and one hour for large muscle exercise.

***Violation of California Code of Regulations, Title 15, Section 1390***

169. The California Code of Regulations, Title 15, Section 1390 establishes specific requirements for the imposition of discipline in juvenile facilities. Among these is a prohibition against suspending any of the following as a form of discipline: exercise, education, and rehabilitative programming.

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

COOPERS LLP
TRIAL LAWYERS

170.    Defendants had a mandatory duty to refrain from imposing any discipline that deprived Plaintiff M.B. of exercise, education, and rehabilitative programming. Defendants failed to meet this duty by depriving M.B. of these rights during his room confinement.

***Violation of California Code of Regulations, Title 15, Section 1391***

171.    The California Code of Regulations, Title 15, Section 1391 establishes specific procedures for the imposition of discipline in juvenile facilities. Among these is a requirement that discipline for major rule violations must be documented and include written notice; a hearing by a person not a party to the incident; the opportunity for the youth to be heard, present evidence, and testimony; provision for the youth to be assisted by staff; provision for administrative review.

172.    Defendants had a mandatory duty to impose discipline only in accordance with the above-described procedural protections. Defendants failed to meet this duty by placing Plaintiff M.B. in room confinement without documentation of the discipline and without following the required procedures for major rule violations.

## JURY DEMAND

Plaintiff demands that this matter be tried to a jury.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for relief on all causes of action as follows:

1.    For general damages in a sum according to proof;

2.    For special damages in a sum according to proof;

3.    For nominal damages, if appropriate, in a sum according to proof;

4.    For punitive and exemplary damages against Defendants Johnson, Hicks, Kato, Thomasson, Chief of San Francisco Juvenile Probation Department Katherine Miller and DOES 1-30 in an amount sufficient to punish their conduct and deter similar conduct in the future, pursuant to 42 U.S.C. Section 1983 and California Civil Code Sections 52.1, 51.7, 52(b)(1), and 3294;

5.    For an additional award of up to three times the amount of compensatory damages, pursuant to California Civil Code Sections 52(a) and 52.1;

-43-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

6. For any and all statutory damages allowed by law, including but not limited to those provided by California Civil Code Sections 51.7, 52, and 52.1;

7. For reasonable attorney's fees and cost of litigation pursuant to 42 U.S.C. Section 1988, California Civil Code Sections 52.1(i) and 52(b)(3), and Code of Civil Procedure Section 1021.5 and any other applicable provisions of law.

8. For issuance of a writ of mandate, pursuant to California Code of Civil Procedure Section 1085, ordering Defendants to perform their duties and obligations under the California Welfare and Institutions Code and Title 15 of the California Code of Regulations, including complying with the requirements to:

    a. Prohibit and abolish the use of room confinement as punishment, coercion, convenience, or retaliation, as required by California Welfare and Institutions Code Section 208.3 subdivision (b), subparagraph (2);

    b. Prohibit and abolish the use of room confinement to the extent that it compromises the mental and physical health of the youth, as required by California Welfare and Institutions Code Section 208.3 subdivision (b), subparagraph (3);

    c. Prohibit and abolish the use of room confinement before other less restrictive options have been attempted and exhausted, unless attempting those options poses a threat to the safety or security of any minor, ward, or staff, as required by Welfare and Institutions Code Section 208.3 subdivision (b), subparagraph (1);

    d. Comply with all components of the process required for the use of room confinement when used for a lawful purpose, as required by California Welfare and Institutions Code Section 208.3 subdivisions (c) and (d);

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

e. Comply with the grievance procedures required under California Code of Regulation, Title 15, Section 1361.

f. Provide education as required under California Code of Regulation, Title 15, Section 1370.

g. Provide programming, recreation, and exercise as required under California Code of Regulation, Title 15, Section 1371.

h. Impose discipline only as permitted under California Code of Regulation, Title 15, Section 1390, and in compliance with the procedures required under California Code of Regulation, Title 15, Section 1391.

9. For an order declaring that Defendants' acts and omissions violated Plaintiff's rights;

10. For injunctive relief eliminating the use of unlawful solitary or room confinement for Plaintiff for any purpose other than a rare and temporary response to prevent imminent and serious physical harm;

11. For cost of suit herein incurred; and

12. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 29, 2024                    COOPERS LLP


By: /s/ Bryan S. Vix
    Bryan S. Vix

-45-

SECOND AMENDED COMPLAINT FOR DAMAGES, AND DECLARATORY AND INJUNCTIVE RELIEF

# EXHIBIT 1

Due to the strict confidentiality rules and protections of California Welfare and Institutions Code Section 827 the name(s) of other minors, have been redacted. The following documents have been granted under the SF Superior Court, Juvenile Division for use in this case. Plaintiff's name has been redacted and superimposed with "M.B." for their privacy, where applicable.

# CLAIM AGAINST THE CITY AND COUNTY OF SAN FRANCISCO

Before completing this form please read the instructions on the back. Untimely claims will be returned. Please submit this form and supporting documentation to the **Controller's Office, Claims Division, 1390 Market Street, 7th Floor, San Francisco, CA 94102** in person or by mail.

**\* = REQUIRED    \*\* = REQUIRED IF KNOWN**

| 1. Claimant's Name and Home Address (Please Print Clearly) | 2. Send Official Notices and Correspondence to: |
|---|---|
| \* ▋ | \* ▋ |
| 375 Woodside Ave, Unit 7 | 375 Woodside Ave, Unit 7 |
| City San Francisco    State CA    Zip 94127 | City San Francisco    State CA    Zip 94127 |
| Telephone Daytime    Evening    Cellular | Telephone Daytime    Evening    Cellular |

| 3. Date of Birth | 4. Social Security Number | 5. Date of Incident | 6. Time of Incident (AM or PM) |
|---|---|---|---|
| ▋ | ▋ | \* 12/21/2022 | \*\* 11:00 AM (aprox) |

| 7. Location of Incident or Accident | 8. Claimant Vehicle License Plate #, Type, Mileage, and Year |
|---|---|
| \*\* Juvenile Justice Center, 375 Woodside Ave. | \*\* N/A |

**9. Basis of Claim.** State in detail all facts and circumstances of the incident. Identify all persons, entities, property and City departments involved. State why you believe the City is responsible for the alleged injury, property damage or loss.

\* See attachement to this Claim Form.

| Name, I.D. Number and City Department of City Employee who allegedly caused injury or loss | Type of City Vehicle | Vehicle License Number and Bus or Train Number |
|---|---|---|
| \*\* SF Juvenile Probation Department | \*\* N/A | \*\* N/A |

**10. Description of Claimant's injury, property damage or loss**

\* See attachement to this Claim Form.

**11. Amount of Claimant's property damage or loss and method of computation. Attach supporting documentation. (See Instructions)**

ITEMS

| | |
|---|---|
| \* | $ |
| | $ |
| | $ |
| | $ |
| **TOTAL AMOUNT** | $ |

Court Jurisdiction:    Limited (up to $25,000) ☐
Unlimited (over $25,000) ☑

**12. Witnesses (if any) Name**    Address    Telephone

1. See attachement

2.

| 13. | Do Not Write In This Space |
|---|---|
| \* ▋ | June 5, 2023 |
| Signature of Claimant or Representative    Date | |
| ▋ | In Pro Per |
| Print Name    Relationship to Claimant | |

**RECEIVED 23 JUN 16 AM 11:30 CITY & COUNTY OF SAN FRANCISCO CONTROLLER**

**CRIMINAL PENALTY FOR PRESENTING A FALSE OR FRAUDULENT CLAIM IS IMPRISONMENT OR FINE OR BOTH. (PENAL CODE §72)**

CLAIMANT COPY

A COMPLETED CLAIM FORM AND SUPPORTING DOCUMENTATION MUST BE FILED WITH THE
CONTROLLER'S OFFICE, CLAIMS DIVISION, 1390 MARKET STREET, 7TH FLOOR, SAN FRANCISCO, CA 94102-5402

# INSTRUCTIONS FOR FILING A CLAIM

Failure to complete all sections of the Claim form will delay the processing of your claim
and result in the return or denial of your claim.

1. **Claimant's Name, Address and Telephone**-State the full name, mailing address, and telephone numbers of the person claiming personal injury, damage or loss.

2. **Official Notices and Correspondence**-Provide the name, mailing address, and telephone numbers of the person to whom all official notices and other correspondence should be sent, if other than claimant. This official contact person can be the claimant or a representative of the claimant. If this section is completed, all official notices and correspondence will be sent to the person listed.

3. **Date of Birth**-State claimant's date of birth including month, day, and year.

4. **Social Security Number**-State the claimant's social security number. The Federal Government requires the City to report settlements for present or future medical care. This information will be kept confidential and only shared with the Federal Government. The City is unable to process payment without this information.

5. **Date of Incident**-State the exact month, day, and year of the incident giving rise to the claim.

6. **Time of Incident**-State the exact time, including A.M. or P.M., of the incident giving rise to the claim.

7. **Location of Incident of Accident**-Include the city and exact street address or intersection where the incident occurred.

8. **Claimant Vehicle License Plate Number**-Please provide license plate number of vehicle driven by claimant or in which claimant was a passenger.

9. **Basis of Claim**-State in detail all facts supporting your claim, including all facts and circumstances of the incident, all alleged injuries, property damage and loss, all persons, entities, property and City departments involved, and why you believe the City is responsible for the alleged injury, property damage or loss. In the appropriate boxes, provide the name, I.D. number and City department of the City employee(s) who allegedly caused the injury or property damage, the type of City vehicle involved (if any), and the license and number of the City vehicle involved (if any). For accidents involving a bus or light rail vehicle, please provide the line and vehicle number.

10. **Description of Injury, Property Damage or Loss**-Provide in full detail a description of the injury, property damage or loss that allegedly resulted from the incident. If claimant's vehicle was involved, provide the make, model, mileage, and year. You may attach additional material.

11. **Amount of Loss and Method of Computation**-State the total amount of money you claim in damages. Provide a breakdown of each item of damages and how that amount was computed. You may include future, anticipated expenses or losses. Please attach copies of all bills, receipts and repair estimates. If the claim involves property damage, please provide two repair estimates. The Government Code provides that if the claim is for less than $10,000, the claimant must state the total amount claimed and the basis of this computation. If the claim exceeds $10,000, no dollar amount need be provided, but the claimant must indicate the applicable court jurisdiction. Limited civil jurisdiction cases are those involving damages under $25,000; unlimited civil jurisdiction cases are those involving damages of $25,000 or more.

12. **Witnesses**-State the names, addresses, and telephone numbers of any persons who witnessed the incident. Attach list of additional names if necessary.

13. **Signature of Claimant or Representative**-Please sign and date. Print name of signatory and relationship to claimant. The claim must be signed by the claimant or by the official representative of the claimant.

Claims for death or injury to persons or damage to personal property must be filed within six months after the incident giving rise to the claim. All other claims must be filed within one year.

Personal service of claims can be accomplished during regular business hours, Monday through Friday (excluding County holidays). If you want a time stamped copy of your claim returned to you, please present an original and copy of the claim, and include a self-addressed stamped envelope.

For information on the status of your claim, please call the applicable number listed below:

| WATER DEPARTMENT | 554-3900 | PORT OF SAN FRANCISCO | 554-3900 | PUC SEWER | 554-3900 |
| MUNICIPAL RAILWAY | 554-3900 | S.F. INTERNATIONAL AIRPORT | (650) 821-5073 | DEPT. OF PUBLIC WORKS | 554-3900 |
| OTHER DEPARTMENTS | 554-3900 | CONTROLLER'S CLAIM DIVISION | 554-3833 | DEPT. OF BLDG. INSPECTION | 554-3900 |

We Do Not Accept claims for the following agencies:

1. HOUSING AUTHORITY        1815 Egbert Avenue, S.F., CA 94124        (415) 715-3280
2. SAN FRANCISCO UNIFIED SCHOOL DISTRICT        555 Franklin Street, 2nd Fl, S.F., CA, 94102        (415) 241-6000
3. SAN FRANCISCO COMMUNITY COLLEGE DISTRICT        50 Phelan Avenue, S.F., CA 94112        (415) 239-3556

*Please be advised that the City and County of San Francisco may offset against a claim any amounts owed by the claimant, including unpaid hospital bills, unpaid parking and traffic tickets and welfare reimbursements or overpayments.*

**ATTACHMENT TO #9:**

This claim arises from the harm caused by the City and County of San Francisco ("City") when it unlawfully held ▉▉▉▉▉▉▉▉▉▉▉ an African-American nineteen-year-old, in solitary confinement in juvenile hall. From Wednesday, December 21, 2022, to Saturday, December 24, 2022, the San Francisco Juvenile Probation Department held ▉▉▉ in the county's locked juvenile facility on lockdown (cell/room confinement) in violation of federal and state constitutional and statutory protections, state regulations, and San Francisco Juvenile Probation Department's written policies.

▉▉▉▉ is currently confined in San Francisco's juvenile hall. On December 21, 2022, ▉▉▉▉ ▉▉▉▉ was transported off-site to attend a medical appointment, when San Francisco Juvenile Probation Officers searched his cell and found a cell phone. ▉▉▉▉ belongings were then moved to a different holding cell. When ▉▉▉ returned from his medical appointment, he was confined in this new cell and placed on lockdown for three days, from December 21 until approximately 11:00AM on Christmas Eve, December 24, 2022. While on lockdown, ▉▉▉ was confined for twenty-two hours per day to a small cell with the only natural light coming through a frosted, narrow window. ▉▉▉ meals were served to him while he was in his cell, and ▉▉▉ was not allowed to interact with other youths in his unit. He was only allowed out of his cell for one hour each morning and afternoon and continued to be isolated from any other youth on the unit during these periods. ▉▉▉ was not informed of when his lockdown would end. During the lockdown, ▉▉▉ told officers that he believed that the lockdown was a violation of his rights. ▉▉▉ filed a grievance regarding his lockdown but did not receive any written response from the Juvenile Probation Department.

▉▉▉ cell confinement violated state law and regulation. Welfare & Institutions Code (WIC) section 208.3 and CCR Title 15, section 1354.5 prohibit juvenile facilities from using "room confinement" for the purpose of punishment, coercion, convenience or retaliation. Room confinement is defined as "placement of a minor or ward in a locked sleeping room or cell with minimal or no contact with persons other than correctional facility staff and attorneys."[1] If room confinement is to be used for a lawful purpose, less restrictive options must first be exhausted, and the confinement may not exceed four hours. After four hours, there must be approval by the facility superintendent and an individualized plan for reintegration.

▉▉▉ cell confinement violated additional state regulations under CCR Title 15, including, section 1361 (Grievance Procedure), section 1371 (Programs, Recreation, and Exercise), section 1390 (Discipline), and section 1391 (Discipline Process). These sections set forth important standards for adequate treatment of youth in juvenile facilities. Among other protections, these sections require a written response to any grievance within 10 days, at least three hours of programming per day, and documentation and due process for any discipline.

Finally, ▉▉▉ cell confinement violated San Francisco Juvenile Probation Department's written policies, including its policies for room confinement and grievances. Under written policy, the use of room confinement is limited to "those youth who present an imminent or substantial threat to themselves, other youths, or staff and for the time needed to address the threat of harm."[2] After two

---

[1] Welfare and Institutions Code Section 208.3(a)(3)).

[2] San Francisco Juvenile Probation Department Juvenile Hall Policy and Procedures Manual, Chapter 9 – Rules and Discipline, p. 677.

hours, staff must contact a Senior Counselor, who will contact SPY (Special Programs for Youth) to develop a Reintegration and Safety Plan. [3] ▮ did not present a threat to himself or others, and none of these procedures were followed.

As a result of the actions and policies, practices, and/or customs of the San Francisco Juvenile Probation Department and its employees, ▮ was unlawfully held in isolation against his will in a locked cell, deprived of freedom of movement and social interaction, subjected to unlawful punishment, and denied adequate, safe, caring and humane treatment. ▮ claim for damages is based on the City's direct and vicarious liability for false imprisonment, failure to discharge a mandatory duty, intentional infliction of emotional distress, and negligence. ▮ claim also arises under state constitutional law, including Article I, sections 1, 3, 7, and 17, and federal constitutional law, including the Eighth Amendment right to be free from cruel and unusual punishment and the Fourteenth Amendment right to due process.

## ATTACHMENT TO #10:

▮ has suffered extensively as a result of the actions of the San Francisco Juvenile Probation Department. He seeks compensation from the City and County for the unlawful restrictions on his liberty, deprivation of adequate exercise and recreation, deprivation of social contact, denial of required care and treatment, physical harm and discomfort, mental anguish, emotional distress, feelings of unjust treatment, reputational harm, fear, anxiety, humiliation, and trauma.

## ATTACHMENT TO #12:

The following is a non-exhaustive list of possible witnesses upon information and belief. This list will be expected to grow as discovery commences and more information is available to claimant:

- Probation Officer Warren Johnson
- Probation Officer Thomasson
- Probation Officer Hicks
- Probation Officer Carr
- Probation Officer Chay
- Probation Officer Penney
- Probation Officer Lisa Randall
- Attorney Sidney Hollar

---

[3] San Francisco Juvenile Probation Department Juvenile Hall Policy and Procedures Manual, Chapter 9 – Rules and Discipline, p. 681. Special Programs for Youth is a program of the Public Health Department that provides health and mental health services in the juvenile hall.

CITY AND COUNTY OF SAN FRANCISCO



DAVID CHIU
City Attorney

OFFICE OF THE CITY ATTORNEY

Frederick P. Sheinfield
Chief Claims Deputy

DIRECT DIAL:    (415) 554-3872
E-MAIL:         RICK.SHEINFIELD@SFCITYATTY.ORG

July 19, 2023

███████████

Minor
375 Woodside Ave., Unit 7
San Francisco, CA  94127

RE:    Claim of ███████████ / Claim Number 23-02526

        Department:      JUVPRO  Juvenile Probation/Y.G.C. (12)
        Incident Date:   December 21, 2022
        Claim Filed:     June 16, 2023

**NOTICE OF ACTION UPON CLAIM**         **PLEASE TAKE NOTICE THAT**

An investigation of your claim filed with the City and County of San Francisco has revealed no indication of liability on the part of the City and County.  Accordingly, your claim is DENIED.

**WARNING**

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim.  See Government Code section 945.6.  This time limitation applies only to causes of action arising under California law for which a claim is mandated by the California Government Claims Act, Government Code sections 900 et. seq.  Other causes of action, including those arising under federal law, may have shorter time limitations for filing.

You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.

Please also be advised that, pursuant to Code of Civil Procedure sections 128.7 and 1038, the City and County of San Francisco will seek to recover all costs of defense in the event an action is filed in this matter and it is determined that the action was not brought in good faith and with reasonable cause.

Very truly yours,

DAVID CHIU
City Attorney

Frederick P. Sheinfield
Chief Claims Deputy

FOX PLAZA ·1390 MARKET STREET, 7TH FLOOR · SAN FRANCISCO, CALIFORNIA 94102-5408
RECEPTION: (415) 554-3900 · FACSIMILE: (415) 554-8795

n:\claim\cl2023\23-02526\01691718.docx

Claim of:     ███████████          Claim Filed:   June 16, 2023

I, Narayan Bhattarai, say:  I am a citizen of the United States, over eighteen years of age, and not a party to the within action; that I am employed by the City Attorney's Office of San Francisco, Fox Plaza, 1390 Market Street, 7th Floor, San Francisco, CA 94102.

That on July 19, 2023 I served:

### NOTICE OF ACTION UPON CLAIM

by placing a true copy thereof in an envelope addressed to:

███████████
Minor
375 Woodside Ave., Unit 7
San Francisco, CA  94127

Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service.  I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail.  In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2023 at San Francisco, California.

_____
Narayan Bhattarai

### DECLARATION OF SERVICE BY MAIL

n:\claim\cl2023\23-02526\01691716.docx



**DAVID CHIU**
**CITY ATTORNEY**
CITY AND COUNTY OF SAN FRANCISCO

FOX PLAZA · 7TH FLOOR
1390 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94102



US POSTAGE PITNEY BOWES

ZIP 94103   $000.63
02 4W
0000346600   JUL 19 2023

2023 JUL 20 P 3: 10

RECEIVED
SAN FRANCISCO
JUVENILE PROBATION
DEPARTMENT

94127⬝1221  CO28

# EXHIBIT 2

Due to the strict confidentiality rules and protections of California Welfare and Institutions Code Section 827 the name(s) of other minors, have been redacted. The following documents have been granted under the SF Superior Court, Juvenile Division for use in this case. Plaintiff's name has been redacted and superimposed with "M.B." for their privacy, where applicable.



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**INCIDENT REPORT**

| Date and Time of the Incident 12/21/22  1:40 pm | Copies to:   ☐ Probation Officer   ☐ Youth's File  Other: |
|---|---|
| Report Written By  Thomasson | **Other Staff Witnesses:** |
| | 1. Hicks |
| | 2. |
| | 3. |
| | 4. |

| | | | | Name, Date, and Time Supervisor Notified | | | |
|---|---|---|---|---|---|---|---|
| USE OF SEPERATION | ☐ YES | ☑ NO | | | | | |
| ROOM CONFINEMENT | ☐ YES | ☑ NO | | | | | |
| USE OF RESTRAINTS | ☐ YES | ☑ NO | | | | | |
| USE OF FORCE | ☐ YES | ☑ NO | | | | | |
| TYPE OF FORCE USE: | | | | | | | |

| Youth's Name ▉ | UNIT 7 | AGE | PO LR |
|---|---|---|---|
| Youth's Name | UNIT | AGE | PO |
| Youth's Name | UNIT | AGE | PO |
| Youth's Name | UNIT | AGE | PO |

On 12/21/22 at 1:40pm counselor Hicks and myself searched ▉ ▉ room upon being notified. He had major contraband in his room and that he was contacting unknown sources from his room in unit 7. It was also stated that he had a vape pen and drugs.

Upon searching his room, we found (3) wire cords used for charging phones, a cellphone hidden under his toilet, a portable charger, and several other things. This is considered major contraband and a serious safety issue for staff, other adults, JJC, and possible members of the community.

Counselor's Signature: _Thomasson_   Date: _12/21/22_   Time: _____

December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**INCIDENT REPORT**

All the items were removed from his room and ██████ was placed in a different room. This incident is still under investigation as to how ██████ was ████ able to bring such items into the facility. ██████ refused to cooperate with staff as far as how he brought these items to JJC or from whom he got these items from. The charging cords in his room can also be very dangerous because they can be used to strangle a staff or another adult.

Due to the seriousness of this situation and the fact that ██████ refused to cooperate. He was placed on a modified program & separate from the other adults while this incident was being investigated.

- Room time separation started 12/21 at 3:00pm Ended 12/24 at 11:00pm
- I authorized the room confinement as the OD and unit 7 manager (Thomasson)
- Room confinement was evaluated every day 2-3 times a day as staff tried to talk to + counsel ██████ about the seriousness of the contraband incident; as well as try to get information on how it was brought into JJC
- (I) Thomasson ended the room confinement when I felt it was safe for ██████

Counselor's Signature: _Thomasson_ Date: _12/21/22_ Time: _____

December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**INCIDENT REPORT**

con't
to join program with the other adults on this living unit. IN PAST practice the last time this situation happened almost a year ago. The individual who snuck in the cell phone caused a major issue with the other adults be in fear of their programming being jeopardized.

(3) of the adults Thanked me for not putting the unit on lockdown and this was also one of the reasons I felt I had to separate ████████ from the other adults.

Counselor's Signature: _____ Date: _____ Time: _____

December 24, 2020

# EXHIBIT 3

Due to the strict confidentiality rules and protections of California Welfare and Institutions Code Section 827 the name(s) of other minors, have been redacted. The following documents have been granted under the SF Superior Court, Juvenile Division for use in this case. Plaintiff's name has been redacted and superimposed with "M.B." for their privacy, where applicable.

12:08pm Shower program

12:20pm Shower Concluded — Carr

12:30pm Lunch Program — Carr

12:42pm ██ M.B. ██ escorted to
Admission to leave for
general for dental appt. cdr (IT)

1pm Lunch Concluded — Carr

1:30pm Open Rec. Program begins. — Hicks

1:40pm Room Searches conducted on
rooms 701, 703, 705, 706, 710.
Small amounts of contraband were
found in all rooms with the
exception of one room (708)
that contained contraband that was
a cell phone and also what appeared
to be some kind of Wifi device
all noticeable contraband was removed
from the rooms and room (708)
is now out of order detainee
██ M.B. ██ room has been moved
to room (706) until further

Without Officer of the Day Approval.

—Hicks

2:45pm Open Rec. Program
   Concluded. 4 Adult males currently
Cleaning there rooms.           —Hicks

Room Searches must
be done EVERYDAY! This
is a standard policy
even if staff just
searches (1) room.
STAFF must log/Notate
which staff completed
rooms searches (same
as pipe checks) If
Room searches aren't
being done, staff is subject
to being written up

8:30AM  Breakfast Program Concludes

                                                                 — W Johnson

8:45AM  Youth ███ M.B. ███ starts Morning REC

                                                                - W Johnson

Late Entry
8:30AM  Detainee ███ M.B. ███ was advised that his
       Electronic Privileges: Laptop computer, Tablets
       and mp3 player has been Revoked. Until further Notice.
███ M.B. ███ will be provided with a REC schedule    — W John
       for AM & PM SHIFTS. (ALL MEALS IN ROOM)
       (1 Hour REC IN AM) And (1 Hour REC in PM)     — W Johnson

9:45AM  Youth ███ M.B. ███ secure in assigned Room # 706
       Room 706 was searched @ 9:30 AM NO Major
       Contraband Found. Room searched by W. Johnson.

                                                                 — W. Johnson

10:00AM  open REC started All youth.

                                                        — W. Johnson

10:23AM  Christina from Public Defenders office on
       unit to SEE ███████████

                                                      — W Johnson

10:29am  Public Defenders staff Departs the unit
                                                      — W Johnson

10:30AM  Room searches conducted by Warren Johnson.
       703 And Room 710   NO Major
       Contraband Found.  ███████████████

11:14AM  LMA starts, Counselor Penney & Carr
       Escorts youth to EC-Gym

EC-Gym back to unit (1114/program concluded

— W. Johnson

11:50am Phase off Program starts

— W. Johnson

12:00pm Phase off Program Concludes

— W. Johnson

12:07 PM Nurse on unit to see youth ██ M.B. ██

12:11pm Room search of #205, ██████ no major contraband found in Room

— W. Johnson

12:14pm Nurse Departs the unit

— W. Johnson

12:40 pm Lunch program starts.

— W. Johnson

1:10pm Lunch program Concludes

W. Johnson

1:30 pm Room 701 searched no major Contraband found in ██████ Assigned Room.

— W. Johnson

12/22/22 1:37pm SPY on unit to see youth ██ M.B. ██
youth ██ M.B. ██ In med Room with Dr. Smith

— W. Johnson

1:50 PM Dr. Smith Departs the unit

— W. Johnson

2:45 PM Shift Summary:
All programs on Task, No Issues,   (Count 5)
0 Admissions
0 Transfers
0 Releases

— W. Johnson

Unit Quite, Logs Reviewed, Youth Secure, All Accountable Items Inventoried As follows:

(6) sporks       (1) Ex Battery    (1) Garrett Wand    (2) Ankle cuffs
(2) Lg spoons    (4) chargers      (1) Handcuff key    (2) Handcuffs
(1) Ladle        (2) Unit Radios   (1) Handcuff case   (1) CPR Mask
(1) Pasta su     (3) scan pens     (1) EMEr Radio      (1) 911 Tool
(1) scan pad     (2) Water Keys    (1) Waist chain
(1) scan pipe    (1) Flashlight    (2) Security Keys

(5 young men)

Scanning schedule         CASENOTE schedule:
PENNEY      3-6       ████████   ████████
chay        6-9       ████████
carr        9-10      ████ M.B. ████
Johnson w.  10-11     ████████



1 Youth [M.B.] out for Afternoon Rec Virtual Visit
w/ Family
                                    L.O.Johns
1 OPEN REC All youth. ██ M.B. ██ Concludes
his 1 Hour REC                      ~ W.Johnson

8m  Attorneys and Jaque seeing all
    Adults in Unit.
                                    (706)
    Attorney S. Holler seeing ██ M.B. ██
    Pizza party for entire Group and
    Staff provided by Public Defenders.
    All youth being fed.
                                    — Cl

9 pm  Attorneys leave Unit this time.
      Shower Underway Hygiene Program
                                    — Cl

6:30pm Shower Ends.
Open Rec Underway.
TV / PS4 / College work.

7:10pm  M.B.  was skiped on
Showers and had to
~~take~~ Shower late. He is
Showering Now
                        — Carr

8pm Nurse on Unit to
disperse meds
                        — Carr

8:30pm Open Rec Concludes
                              w John
10:45 Pm SHIFT Summary:

     0 Transfers
     0 Admissions
     0 Release
     All programs in time.
     5 Count

                        w. John

Unit quiet, Logs Reviewed, Youth Secure, All
Accountable Items Inventoried As follows;

(6) sporks    (4) chargers    (1) Hand cuff case    (2) Ankle cuffs
(2) Lg spoons    (2) unit Radios    (1) Hand cuff key    (2) Hand cuffs
(1) Ladle    (1) Ex Battery    (1) Garrett Wand    (1) CPR MASK
(1) Pasta svc    (3) Scm pens    (1) Emer Radio    (1) 911 Tool
(1) Scm pipe    (2) Water keys    (1) Waist chain
(1) Scm pad    (1) Flashlight    (2) Security Keys
                                    (5 young men)

7:00 AM   Scanning Schedule:          Case Note Schedule:

          Johnson  7-10
          Hicks    10-1
          MA       1-3

8:00 Am   Cooking class with Aquila,

                                              —Co. Johnson

8:45 Am   Christmas Breakfast starts with youth and
          staff
                                              — W. Johnson
11:15 Am  LMA starts, All youth
          to Ex Gym Escorted by Hicks -N- MA

11:18 Am  [M.B.]  in Rec from units of for 1 hour.
          Room searches conducted.              W. Joh

12:20     LMA Concluded, Rinse-off program
          Starts, youth [M.B.] secure in assigned Room.
12:40 Lunch program starts, Rinse-off Concludes

                                              — Wa

1:30pm school - open Rec starts all of ntl.

— W Johnson

2:45 PM open Rec concludes, youth secure in their Assigned Rooms.

— W Johnson

3:03pm youth [M.B.] starting afternoon Rec. Video Visit / Telephone calls / Television.

— W Johnson

Shift Summary. No Issues. (count 5)

— W. Johnson

DECEMBER 23, 2022  FRIDAY  SHIFT 3-11

Unit quiet, logs reviewed, youth secure, all accountable items inventoried as follows:

(6) sporks      (4) chargers      (2) handcuffs      (1) waist chains
(2) cups/pens   (2) unit radios   (2) ankle cuffs    (1) EMER Radio
(1) table       (1) Ext Battery   (1) ponder House   (1) CPR mask
(1) Pasta saw   (3) stam pens     (1) Hand cuff key  (1) 411 box
(1) Subt pipe   (2) winter keys   (1) Flashlight
(1) Subt pad    (2) security keys (1) Garrett wand
                                            (1 camera view)

3:00pm  swimming schedule:        case note schedule:
        MA      3-6
        Johnson  6-9               [M.B.]
        Chau    9-10
        Johnson  10-11

4:00pm  Rec starts, youth [M.B.] Rec concludes

— W Johnson

Youth [M.B.] schedle to Rejoin Full program
on 12/24/2022 11:00 AM per OD Thompson

— W. Johnson

545PM Dinner program starts

— W. Johns

615 PM Dinner Program Concludes

— W John

620 pm Shower program starts / Hygiene products offered.
Yout [M.B.] Request A Razor       — W John
630pm shower program Concludes

— W Johns

640 pm open Rec. starts.

= W Johnson

810 pm Nurse on unit

W Johnson

819 pm Nurse Departs the unit

— W Johnson

830 pm open Rec is Concluded

. W Johnson

1 930 pm Nurse on unit to see ████

W John

?5pm Nurse Departs unit

W John

11:18       ?UPPT Summary?

12:20

12:40 Luc?

— W. John

Unit 7 Quiet and Secured.
Pop Count: 5 adult Males.

ML

Equipment inventory:

| | | |
|---|---|---|
| 6 Sporks | 2 Security keys | 1 waist chain |
| 2 Radios | 2 Handcuffs | 1 cpr mask |
| 4 Radio Charger | 2 Ankle cuffs | 1 all tool |
| 3 Scan Pens | 2 Water keys | 1 Emer. radio |
| 1 Ladle | 1 Hand cuff case | 1 Scan Pipe |
| 2 pasta Server | 1 Hand cuff key | 1 Scan pad |
| 2 Large Spoon | 1 Garret wand | 1 flash light |
| | | 1 Ex Radio Bata |

ML

7:00 AM Scan schedule
    Lopez    7am - 10
    Count    10 - 1
    Johnson W    1 - 3

8:30 AM Breakfast Program starts.

8:38 AM Nurse on unit to see youth ▮M.B.▮
Complaining of stomach. Problems.

W. Johnson.

8:49 AM Nurse Departs the unit

- W. Johnson

11    Breakfast program Concludes.

- W. Johnson

- W Johnson

12:,    aye cleanup and Common Area
        starts

12:40

Johnson

- W. Johnson

red.
:/.
ML

1 waist chain
1 Cpr mask
1 ill tool
1 Emer. radio
1 Scan fire
1 Scan pad
1 flash light
1 Ex Radio Batto,
ML

12/24/2022

10:07 ᴬᵐ Counselor Rivera, & MA changed units MA to 7 Rivera to 6 per orders of OD Thomasson.
— W. Johnson

11:10 ᴬᵐ LMA program starts. EC-Gym THE Following youth Refused to participate
— W Johnson
— w. Johnson

12:07 Counselor's Chan & MA Escort youth M.B. From Unit 3 Gym back to unit 7 Rinse off starts!
— W. Johnson

STAFF NOTE! 11:00 ᴬᵐ LATE Entry M.B. , Back into Full program Starting 11:00AM 12/24/22 PER OD Thomasson
— W Johnson

12:30 Lunch program starts, All youth. Rinse-off program concludes
— W. Johnson

1:00 pm Lunch program concludes
— W. Johnson

1:30 pm Rec. PROGRAM
— ma

1:50 pm All youths are locked and secured in their Room
— ma

Hason.
I.

W. Johnson

W. Johnson

W. Johnson

# EXHIBIT 4

Due to the strict confidentiality rules and protections of California Welfare and Institutions Code Section 827 the name(s) of other minors, have been redacted. The following documents have been granted under the SF Superior Court, Juvenile Division for use in this case. Plaintiff's name has been redacted and superimposed with "M.B." for their privacy, where applicable.



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**ROOM CONFINEMENT CHECKLIST**

| Youth's Name | PIN Number | Unit | Date of Room Confinement | Time of Room Confinement |
|---|---|---|---|---|
| ██████████ | ██████ | 7 | 12-21-2022 | 6:30 PM |

**Explanation of safety concern. Describe interventions utilized prior to Room Confinement.**

ON DECEMBER, 2022 AT 9:44 PM I Recieved a E-mail from SENIor KATO stating he reviewed an anonymous CALLer that a Detainee Unit 7 was on Instagram Live displaying contraband Items A Vape Pen, cell phone, tablet And pills

The Room # 708 Was housed by Detainee ███████████ I Warren Johnson Interviewed Detainee ██████ In An Effort to Find out how he obtained a cell Phone. Detainee ██████ Was in Forth coming in giving me An Answer As to where he got The cell phone.

I Advised Detainee ██████ that a cell phone was Considered to be Major Contraband. And that his electronic Privileges, Including Lap-Top And tablet would be Revoked.

youth on the unit was Angry with youth ████. youth ████ Was given a seperate schedule. While Investigating the Contraband. And other youth on the Unit to ensure Detainees ██████ Safety.

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren Johnson | Warren J. Johnson |

Date: _____    Time: _____

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

While the youth remains on Room Confinement, Counselors will observe the behaviors listed below during safety checks while recording their observations in the chart. A Counselor will assess the youth every thirty (30) minutes in the first hour and every fifteen (15) minutes thereafter (as needed) until Room Confinement has concluded. As soon as all of the items below are checked "NO", the Counselor should notify a Senior Counselor and recommend the youth be released from his/her assigned room and the youth should be reintegrated with his/her peers.

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020

Dec-22th 2022



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**ROOM CONFINEMENT CHECKLIST**

### First Hour (to be completed every 30 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | FIRST 30 MINUTES (TIME): 10:00 – 10:30 | SECOND 30 MINUTES (TIME): 10:30 – 11:00 |
|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

**1st 30 Minutes:**
DETAINEE ON SECURITY ASSESSMENT Pending Investigation of MAJor Contraband Found In Detainees Room.

**2nd 30 Minutes:**
DETAINEE on SECURITY ASSESSMENT Pending Investigation of MAJor Contraband Found On Detainees Room

| | Counselor's Name | Counselor's Signature |
|---|---|---|
| 1st 30 Mins: | Warren Johnson | Warren J. Johnson |
| 2nd 30 Mins: | Warren Johnson | WL J. Johnson |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 30 minutes**    ☐ Approved    ☐ Denied

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

**Room Confinement beyond 60 minutes**    ☐ Approved    ☐ Denied

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**ROOM CONFINEMENT CHECKLIST**

Second Hour (to be completed every 15 minutes)

**Criteria to Determine Imminent Risk to Safety of Youth or Staff**

| OBSERVABLE BEHAVIORS | TIME: 7:30-8:30 | TIME: | TIME: | TIME: | TIME: |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

DETAINEE ON SECURITY ASSESSMENT Pending Investigation of Major Contraband found in Detainee's Room

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren Johnson | Wu 1. Joll |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 2 hours**    ☐ Approved    ☐ Denied

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT
ROOM CONFINEMENT CHECKLIST**

## Third Hour (to be completed every 15 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | 2.00 - 2:30 TIME: | 2:30 - 2:45 TIME: | 4:00 - 4:30 TIME: | 4:30 - 5:00 TIME: | 5:00 - 5:30 TIME: |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

Detainee on Security Assessment Pending Investigation of Major Contraband found in Detainee's Room.

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren Johnson | Warren J. Johnson |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 3 hours**    ☐ Approved        ☐ Denied

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



### SAN FRANCISCO JUVENILE PROBATION DEPARTMENT
### ROOM CONFINEMENT CHECKLIST

### Fourth Hour (to be completed every 15 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | TIME: 6:20-6:50 | TIME: 6:50 7:10 | TIME: 7:10 - 8:30 | TIME: | TIME: |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

Detainee on Security Assessment Pending Investigation of major Contraband found in detainees room!

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren Johnson | Wn 2. Gil |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020

*December 23rd 2022* (handwritten, left margin)



### SAN FRANCISCO JUVENILE PROBATION DEPARTMENT
### ROOM CONFINEMENT CHECKLIST

## First Hour (to be completed every 30 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | FIRST 30 MINUTES (TIME): 845-915 | SECOND 30 MINUTES (TIME): 915-945 |
|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

**1st 30 Minutes:**

Detainee on Security Assessment Pending Investigation of Major Contraband Found In detainees Room

**2nd 30 Minutes:**

Detainee on Security Assessment Pending Investigation of Major Contraband Found In detainee room

| Counselor's Name | Counselor's Signature |
|---|---|
| 1st 30 Mins: Warren Johnson | Warren J. Johnson |
| 2nd 30 Mins: Warren Johnson | Warren J. Johnson |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 30 minutes**    ☐ Approved    ☐ Denied

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

**Room Confinement beyond 60 minutes**    ☐ Approved    ☐ Denied

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**ROOM CONFINEMENT CHECKLIST**

### Second Hour (to be completed every 15 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | TIME: 9:45-10:15 | TIME: 10:15-1045 | TIME: 10:45-11:15 | TIME: 12:20-12:50 | TIME: 12:50-1:00 |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

Detainee on Security Assessment Pending Investigation of Major Contraband found in Detainee Room

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren F. Johnson | Wm J. John |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 2 hours**    ☐ Approved    ☐ Denied

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

_____

_____

_____

_____

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



## SAN FRANCISCO JUVENILE PROBATION DEPARTMENT
## ROOM CONFINEMENT CHECKLIST

### Third Hour (to be completed every 15 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | TIME: 1:30 - 2:00 | TIME: 2:00 - 2:30 | TIME: 2:30 - 3:00 | TIME: 4:00 - 4:30 | TIME: 4:30 - 5:00 |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

Detainee in Security Assessment Pending Investigation of Contraband found In Detainees Room

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren F. Johnson | Warren I. John |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 3 hours**    ☐ Approved    ☐ Denied

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**ROOM CONFINEMENT CHECKLIST**

**Fourth Hour (to be completed every 15 minutes)**

**Criteria to Determine Imminent Risk to Safety of Youth or Staff**

| OBSERVABLE BEHAVIORS | 5:00-5:30 TIME: | 5:30-6:00 TIME: | 6:00-6:30 TIME: | 6:40-7:10 TIME: | 7:10-7:40 TIME: |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

Detainee in Security Assessment Pending Investigation of Major Contraband found in Detainees Room

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren F. Johnson | W.F. John |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**ROOM CONFINEMENT CHECKLIST**

~~Second~~ Hour (to be completed every 15 minutes)

**Criteria to Determine Imminent Risk to Safety of Youth or Staff**

| OBSERVABLE BEHAVIORS | TIME: 7:40 - 8:10 | TIME: 8:10 - 830 | TIME: | TIME: | TIME: |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

Detainee on Security Assessment Pending Investigation of Major Contraband Found In Detainees Room

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren F. Johnson | Wn J. Juln |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 2 hours**    ☐ Approved    ☐ Denied

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020

December 24 2022



## SAN FRANCISCO JUVENILE PROBATION DEPARTMENT
## ROOM CONFINEMENT CHECKLIST

### First Hour (to be completed every 30 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | FIRST 30 MINUTES (TIME): 8:30-9:00 | SECOND 30 MINUTES (TIME): 9:00-9:30 |
|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

**1st 30 Minutes:**

DETAINEE on SECurity Assessment Pending Investigation of Major Contraband Found In detainee Room

**2nd 30 Minutes:**

Detainee on Security Assessment Pending Investigation of Major Contraband Found In detainee Room

| | Counselor's Name | Counselor's Signature |
|---|---|---|
| 1st 30 Mins: | Warren Johnson | Wak Q |
| 2nd 30 Mins: | Warren Johnson | Wan Qd |

Date of release from room confinement: _____    Time of release from room confinement: _____

**Room Confinement beyond 30 minutes**    ☐ Approved    ☐ Denied

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

**Room Confinement beyond 60 minutes**    ☐ Approved    ☐ Denied

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020



**SAN FRANCISCO JUVENILE PROBATION DEPARTMENT**
**ROOM CONFINEMENT CHECKLIST**

### Second Hour (to be completed every 15 minutes)

### Criteria to Determine Imminent Risk to Safety of Youth or Staff

| OBSERVABLE BEHAVIORS | 9:30 - 10:00 TIME: | 10:00 - 1030 TIME: | 10:30 - 11:00 TIME: | TIME: | TIME: |
|---|---|---|---|---|---|
| Youth refuses to discuss safety within the unit or Youth is causing a disturbance (e.g. banging on door, yelling at staff, refusing directives) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards staff | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is making physical or verbal threats towards other youths | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Youth is displaying physically aggressive behavior (e.g. clenching fists, pacing, posturing) | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| Staff Initials: | | | | | |

**Counselor's Summary:** If all boxes above are checked "NO" at any given time, a Counselor should immediately notify the Senior Counselor of the intent to release the youth from room confinement.

Detainee On Security Assessment Pending Investigation of major Contraband Found In Detainees Room

| Counselor's Name | Counselor's Signature |
|---|---|
| Warren Johnson | Wm. J. Jrl |

Date of release from room confinement: 12/24/22    Time of release from room confinement: 11:00 AM

**Room Confinement beyond 2 hours**    ☐ **Approved**    ☐ **Denied**

**Evidence-based Intervention and/or Conflict Mediation:** After the youth is released from room confinement, staff should conduct an intervention and/or conflict mediation. Document the results of intervention/conflict mediation below.

| Senior Counselor's Name | Senior Counselor's Signature |
|---|---|
| | |

Date: _____    Time: _____

If the youth remains in Room Confinement for two (2) hours as the youth continues to pose an imminent risk to safety of youth or staff, a Reintegration and Safety Plan should be developed. The Counselor should contact the Senior Counselor. The Senior Counselor should notify SPY and request assistance with the development of a Reintegration and Safety Plan.
December 24, 2020

# EXHIBIT 5

Due to the strict confidentiality rules and protections of California Welfare and Institutions Code Section 827 the name(s) of other minors, have been redacted. The following documents have been granted under the SF Superior Court, Juvenile Division for use in this case. Plaintiff's name has been redacted and superimposed with "M.B." for their privacy, where applicable.

1

## CASE NOTES

Youth Name: ███████████████

Case Notes Date: 12/21/22                          AM STAFF  MA

███ had a Good shift. He was out for transport
to the hospital for most of the shift. Please see
report for more details regarding what happen.

Youth Signature: _____    Date: _____
Counselor Signature: _____    Date: 12/24/22
Supervisor Signature: _____    Date: 12/21/22

Case Notes Date: 12-21-22                          PM STAFF: W. Johnson

No Bise PM. Major Contraband Found on
youth. Room. Youth Fail to Follow Rules.
And structured Activities (No Merit points)

Youth Signature: _____    Date: _____
Counselor Signature: W. Johnson    Date: 12-21-22
Supervisor Signature: _____    Date: 12/21/22

Case Notes Date: 21 dec 22                          11-7 STAFF: rh

No probs

Youth Signature: _____    Date: _____
Counselor Signature: rh    Date: 21 dec 22
Supervisor Signature: _____    Date: 22 Dec 22

2

## CASE NOTES

Youth Name: ███████████

Case Notes Date: 12-22-22      AM STAFF _W. Johnson_

Good day, no issues, youth. Reading a book following Instructors.

Youth Signature: _____    Date: _____

Counselor Signature: _W. Johnson_    Date: 12-22-2022

Supervisor Signature: _____    Date: 12/22/22

Case Notes Date: 12-22-22      PM STAFF: W. Johnson

Good evening no issues to report. Followed staff instructs participated in pizza from CBO.

Youth Signature: _____    Date: _____

Counselor Signature: _W. Johnson_    Date: 12-22-2022

Supervisor Signature: _____    Date: 12/22/22

Case Notes Date: 12-22-22      11-7 STAFF: T. Winston

Detainee slept thru out the night without any problems or issues during the shift.

Youth Signature: _____    Date: _____

Counselor Signature: _T. Winston_    Date: 12-22-22

Supervisor Signature: _____    Date: 22 02 22

## CASE NOTES

Youth Name: ▬▬▬▬▬▬

Case Notes Date: 12-23- 2022                    AM STAFF  Ma

MR. ▬▬▬ had a good shift - He was in his room throughout most of the AM shift, due to protocols. No issues to Report.

Youth Signature: _____           Date: _____
Counselor Signature: _____        Date: 12-23- 2022
Supervisor Signature: _____       Date: 12/23/22
Case Notes Date: 12- 23- 2022               PM STAFF: W. Johnson

▬▬▬ had a good day he participated in the christmas luncheon. Displayed a positive attitude

Youth Signature: _____           Date: _____
Counselor Signature: _____        Date: 12-23-2622
Supervisor Signature: _____       Date: 12/23/22
Case Notes Date: 12/25/22                   11-7 STAFF: Julian

Detainee slept throughout the night.

Youth Signature: _____           Date: _____
Counselor Signature: _____        Date: 12/23/22
Supervisor Signature: _____       Date: 2A 0302

1

## CASE NOTES

Youth Name: ████████████

Case Notes Date: 12-24-22    AM STAFF: W. Johnson

No Issues, Back in Full program. Participated
In all ann't activities

| | | |
|---|---|---|
| Youth Signature: | | Date: |
| Counselor Signature: | W Johnson | Date: 12/24-22 |
| Supervisor Signature: | | Date: 12/24/22 |

Case Notes Date: 12/24/22    PM STAFF: MA

████████ had a good shift. He is back in full
program as of 11am today. He followed the
instruction. No issues to report.

| | | |
|---|---|---|
| Youth Signature: | | Date: |
| Counselor Signature: | | Date: 12/24/22 |
| Supervisor Signature: | | Date: 12/24/22 |

Case Notes Date: 12-24-22    11-7 STAFF: Williams

Youth appears to be sleeping.

| | | |
|---|---|---|
| Youth Signature: | | Date: |
| Counselor Signature: | | Date: 12-24-22 |
| Supervisor Signature: | | Date: 12/26/22 |

# EXHIBIT 6

Due to the strict confidentiality rules and protections of California Welfare and Institutions Code Section 827 the name(s) of other minors, have been redacted. The following documents have been granted under the SF Superior Court, Juvenile Division for use in this case. Plaintiff's name has been redacted and superimposed with "M.B." for their privacy, where applicable.

| For office use only | Log # _____ | Title 15. Article _____ | Section _____ |

## JUVENILE HALL
## DETAINEE GRIEVANCE FORM

**PART (A)**

Complete Part A of this form put the completed form in the grievance box. The **Ombudsman will return the pink copy to you for your records. Please press down firmly.**

YOUR NAME ███████████████ UNIT **7** DATE OF INCIDENT **12/2/22** TIME ___ : ___ AM/PM

ALL STAFF ON DUTY _____ . _____ . _____ . TODAYS DATE ___ / ___ / ___

Describe the problem and how you have tried to resolve the matter:

I had contra band in my room I been locked down Since Wednesday I Am not a Threat To myself or others There is no reason To lock me down like a animal and I believe This is a violatrn of my Rights

What would you like to have done to resolve the problem?

I need This To be resolved imeadility I want To Talk To Cheif miller

**PART (B) OMBUDSMAN REFERRAL**

Refer to _____     By _____ Date __/__/__

Not logged as a grievance _____

Referred as a Mediation request. _____     By _____ Date __/__/__

**PART (C) RESPONSE**

By _____ Date __/__/__

**PART (D) RETURN TO DETAINEE**

_____ I am satisfied with this response.          ___ I have the following complaints about filing the grievance.

_____ I wish to appeal because.          ___ I have the following suggestion about the grievance process.

Detainee Signature _____

**PART (E) FURTHER ACTION TAKEN BY OMBUDSMAN**

DSO _____ OSO _____ NIC _____

Appeal Handled _____ Comment _____

Rev. 11/01   White: Ombudsman   Yellow: Facility Director and Pink: Detainee

I have been on Lockdown since
wedensday Today is Friday I
have been im my room
since 4PM yesterday and
won't be let out until 11 AM
That is 18 consecutive hours
I will be let out for one
hour athen Put back in my room
until The second shift of This
day when I will recieve a
second hour of rec. I was Already
Isolated before This I dont
communicate with my peers on
This unit and I don't recieve
any visits. I have not been
Told the name of This Program
I Also have not been Told
when I will get off of it.
I am begetting To feel depressed
and have dark Thoughts I only
get Two hours a day To more
Freely and most of That Time
is used To Talk To my support
system. I AM NOt A danger
To my self or others so There
should be no reason To cage
me like A animal. I have made
no Threats or Violent actions.
This isolation is affecting my mental
health. I remember reading That california
no longer punishes juveniles with room
Their for non violent actions. I'm being treated
in a juvenile facility so This
should apply To This situation

I'm going To look into This further, I hope That This facility isnt violating my rights knowingly. Just To punish me. What good does making me Feel even more Alone do For anyone. violating peoples rights To punish Them is the same Thing That yo YA shut down. I hope This facility is obeying The laws But if I find out This is a violation of my rights I will push This To The highest extent. I understand That consequences are supposed To put in action but They should not come at The cost of my mental health.

<u>Grievance attachment:</u>

███████████ Unit 7, Today's date: _____

Date of Incident:        12/21/22-12/24/22

Staff on Duty:           Johnson, Hicks, Ma, Carr, OD Thomasson

Problem:

From December 21 to December 24, 2022, I was put on lockdown in my cell. During this time, I was in solitary confinement. I was only let out for one hour in the morning and evening, I had to eat my meals in my room, and I was not allowed to take part in programming or have any contact with other youth. Being isolated like this was extremely harmful to me.

The lockdown was punishment for me having a contraband cell phone in my cell. After the officers found the phone, they moved me into a different cell. I did not present any security risk. No one told me anything about my lockdown, when it would end, or how I could contest it. I told the officers that I was suffering from this isolation and that I believed this lockdown violated my rights.

During the lockdown I filed a grievance raising these issues. I did not receive any written response to my grievance, and was not given any opportunity to appeal.

I am filing a new grievance to restate that my rights were violated during this incident and to again seek a resolution. I was unlawfully held in solitary confinement, I was held in isolation against my will, I was denied my rights to programming and exercise, I was denied my rights related to discipline and discipline procedures, and I was denied my rights related to grievances and grievance procedures.

Resolution requested:

I am seeking damages for the harms that I have suffered, and a change in policies and practices so that you do not violate my rights or the rights of other youth in the future.