UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| M. B.,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 24-cv-00301-RFL<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 110, 113 |

## I.    INTRODUCTION

Plaintiff M.B., a twenty-year-old formerly under the jurisdiction of the San Francisco Juvenile Court and confined in San Francisco Juvenile Hall ("SFJH"), filed suit against Defendants City and County of San Francisco, Bryan Thomasson, and other employees of the City, County, and the San Francisco Juvenile Probation Department.  M.B. alleges that from December 21, 2022, to December 24, 2022, Defendants held him in solitary confinement for a total of three days in violation of his rights under both federal and state law.  (Dkt. No. 18.)  Both parties move for summary judgment.  (Dkt. Nos. 110, 113.)  For the reasons that follow, M.B.'s motion is **DENIED**, and Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## II.    BACKGROUND

### A.    Undisputed Facts

M.B. was transferred to SFJH from San Mateo Juvenile Hall in Spring 2022, having previously been adjudicated delinquent and sentenced to four years of confinement in 2020.

(Dkt. No. 113-3 ("M.B. Dep.") at 69:12–76:3.)[1]  On December 21, 2022, Defendants received an anonymous tip that M.B. was in possession of a cell phone, pills, a laptop, and other items that constituted major contraband.  (Dkt. No. 113-6 ("Johnson Dep.") at 30:7–31:12; *see also* Dkt. No. 113-4 ("Thomasson Dep.") at 47:9–25.)  At around 1:30pm, Defendants Thomasson and SFJH Deputy Probation Officer Nigel Hicks searched M.B.'s room and found a cell phone, adapters, a portable charger, and several charging cords.  (Thomasson Dep. at 41:7-43:1.)  This triggered a unit-wide search of every detainee's room and all common areas.  (*Id*. at 59:2–11.)  M.B. was moved to a different room in his unit and placed in room confinement beginning at 3:00pm on December 21.  (*Id*. at 40:4–6, 55:7–56:13.)  While in room confinement, M.B. was provided with about an hour of recreation time, during which he had access to shower facilities, the telephone, visitation, and the gym.  (*See* M.B. Dep. at 233:20–235:22; 262:1–25; Johnson Dep. at 67:21–71:14.)  He remained in room confinement until December 24, 2022, at around 11:00am.  (Thomasson Dep. at 120:1–21; *see also* Dkt. No. 113-20 at 12.)

M.B. submitted two grievances concerning this confinement.  First, during his confinement, M.B. filed a grievance stating that he was beginning to feel depressed and experience mental health issues because he had been in room confinement for days.  (Dkt. No. 18 at 90.)  He admitted he had contraband in his room but asserted that he was "not a threat to [himself] or others," there was no reason for him to be "lock[ed] down like a[n] animal," and he believed his confinement was a violation of his rights.  (*Id*. at 89.)  In a "[g]rievance attachment," M.B. "restate[d] that [his] rights [had been] violated" by his room confinement, explaining that he was "unlawfully held in solitary confinement," "held in isolation against [his] will," and "denied [his] rights to programming and exercise."  (*Id*. at 92.)  He indicated that he was seeking both damages for the harms he experienced and "a change in policies and practices so that [SFJH] do[es] not violate [his] rights or the rights of other youth in the future."  (*Id*.)  Second, in June 2023, M.B. submitted a tort claim to the City and County.  (Dkt. No. 113-10.)  The claim

---

[1] For filings on the docket besides depositions, all references to page numbers refer to ECF pagination.

asserted that M.B.'s room confinement violated state law and regulations (including California Welfare & Institutions Code section 208.3), the San Francisco Juvenile Probation Department's own written policies, and the California and federal constitutions. (*Id*. at 4–5.) M.B. was released from SFJH in June 2025. (M.B. Dep. at 13:8–15.)

### B.    This Action

M.B. filed the operative Second Amended Complaint on April 30, 2024. (Dkt. No. 18.) Defendants moved to dismiss (Dkt. No. 22), and the Court granted the motion in part and denied the motion in part, giving M.B. leave to amend several of his claims (Dkt. No. 34). M.B. did not amend his complaint. The case therefore proceeded on the following claims: the *Monell* claim, the supervisory liability claim, the Fourth Amendment claim, the Eighth Amendment claim, the Fourteenth Amendment claim, the Bane Act claim, and the negligence claim. M.B. moves for summary judgment on the Bane Act, *Monell*, and supervisory liability claims. (*See* Dkt. No. 110.) Defendants move for summary judgment on all claims and M.B.'s request for declaratory and injunctive relief, and punitive damages. (*See* Dkt. No. 113.)

### III.    LEGAL STANDARD

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (cleaned up). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court draws all reasonable inferences in favor of the non-movant, keeping in mind that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Id*. at 255. But conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

3

IV.    **DISCUSSION**

M.B.'s motion is denied in its entirety.  Defendants' motion is denied as to the *Monell* claim, negligence claim, and request for punitive damages and granted as to all remaining claims.

A.    **Evidentiary Objections**

Defendants raise a number of objections to the evidence M.B. proffers in support of his motion.  Specifically, Defendants object to M.B.'s reliance on statements from Chief of the San Francisco Juvenile Probation Department Katherine Miller, Assistant Chief Gabriel Calvillo, and Acting Director Palei Otuhiva; findings from the Probation Department's *Skelly* process and related request-for-admission responses; reports from Disability Rights California ("DRC"), the California Board of State and Community Corrections ("BSCC"), and the American Institutes for Research; and emails from Public Defender Emily Goldman from 2024–2025.  (Dkt. No. 113-1 at 18–22.)  Subject to the limitations and qualifications described below, the evidence is admissible and therefore may be permissibly considered for summary judgment purposes.

First, statements from Miller, Calvillo, and Otuhiva regarding how Defendants' actions aligned with jail policies and whether Thomasson's purported purpose for subjecting M.B. to room confinement was consistent with established practices and what was typically treated as an imminent threat constitute proper lay opinions.  (*E.g.*, Dkt. No. 111-3 at 57 (investigation report).)  However, statements regarding Thomasson's actual intent are speculative, do not constitute proper lay opinions, and therefore cannot be considered on summary judgment.  (*E.g.*, Dkt. No. 111-3 ("Miller Dep.") at 61:4–8.)  Second, the request-for-admission responses associated with the Probation Department's *Skelly* process do not constitute binding Rule 36 admissions regarding whether Defendants' use of room confinement was, in fact coercive.  M.B. has not provided any evidence that the Probation Department's *Skelly* process constituted a "judicial-like adversary proceeding" capable of giving rise to findings with preclusive effect. *Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1179 (9th Cir. 2002) (quoting *Imen v. Glassford,* 201 Cal. App. 3d 898, 907 (1988)).  However, those admissions are relevant evidence of how

4

supervisors at the Department viewed that issue.  Finally, the factual findings in the DRC and BSCC reports (including the findings about other incidents described in the DRC and BSCC reports) are admissible under Federal Rule of Evidence 803(8), even if the witness statements in those reports constitute a second level of hearsay that are not admissible.  The Court does not reach Defendants' other objections to the DRC and BSCC reports or their objections to the American Institutes for Research report and the Goldman emails, which are immaterial to the Court's resolution of the motions for summary judgment.

### B.    Eighth Amendment Claim

Defendants are entitled to summary judgment on M.B.'s Eighth Amendment claim.  M.B. is a juvenile detainee who, despite being adjudicated delinquent, has not been convicted of a crime.  *See* Cal. Welf. & Inst. Code § 203 ("An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding.").  Accordingly, the Fourteenth Amendment applies to his challenge to his placement in room confinement.  *See Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987); *see also Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1163 (9th Cir. 2020); *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.").  Defendants' motion for summary judgment on this claim is therefore granted.

### C.    Fourth Amendment Claim

Defendants are entitled to summary judgment on M.B.'s Fourth Amendment claim.  At the time of his room confinement, M.B. was subject to the jurisdiction of the San Francisco Juvenile Court, and he does not contest that his detention at SFJH was legitimate.  Thus, the Fourteenth Amendment—not the Fourth Amendment—governs his claims challenging his room confinement.  *Pierce v. Multnomah Cnty.*, 76 F.3d 1032, 1043 (9th Cir. 1996) ("[T]he Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody

based upon probable cause for arrest."); *cf. Graham v. Connor*, 490 U.S. 386, 395 & n.10 (1989) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). Defendants' motion for summary judgment on this claim is granted.

###### D.    Fourteenth Amendment Claim

Although a reasonable jury could conclude that Defendants violated M.B.'s Fourteenth Amendment rights, M.B. has failed to carry his burden of demonstrating that his Fourteenth Amendment rights were clearly established at the time of his room confinement. Thus, Defendants are shielded by qualified immunity and entitled to summary judgment on M.B.'s Fourteenth Amendment claim.

First, a reasonable jury could conclude that Defendants violated M.B.'s procedural due process rights. M.B. has a state-created liberty interest in avoiding coercive room confinement, which arises from California Welfare & Institutions Code section 208.3. *See Johnson v. Ryan*, 55 F.4th 1167, 1180 (9th Cir. 2022). Section 208.3(b)(2) provides that, for juveniles, "[r]oom confinement shall not be used for the purposes of punishment, coercion, convenience, or retaliation by staff." Though Defendant argues that the standard articulated in *Sandin v. Conner*, 515 U.S. 472 (1995), determines whether section 208.3 grants M.B. a state-created liberty interest (Dkt. No. 113-1 at 27), the Ninth Circuit has stated that whether *Sandin* applies to detainees who are not convicted prisoners "is unclear," *Carlo v. City of Chino*, 105 F.3d 493, 498 (9th Cir. 1997). The Ninth Circuit observed that "[a] majority of the courts that have addressed this question have held that *Sandin* does not govern the assessment of state-created liberty interests for pretrial detainees" and instead have applied the standard articulated in *Hewitt v. Helms*, 459 U.S. 460 (1983). *Carlo*, 105 F.3d at 498–99. Although M.B. is neither a pretrial detainee nor a convicted prisoner, California's juvenile justice system is rehabilitative, and under state law juvenile halls "shall not be deemed to be, nor be treated as, . . . penal institution[s]." Cal. Welf. & Inst. Code § 851; *see also id*. § 202(b)–(e). Any punishment must be "consistent with . . . rehabilitative objectives" and cannot be punishment for its own sake. *Id.* § 202(b). Moreover, as described above, M.B. was adjudicated delinquent but not convicted of any crime.

Accordingly, the Court is persuaded that the *Hewitt* standard governs the question of whether section 208.3 grants M.B. a protected liberty interest. *See Carlo*, 105 F.3d at 498–99.

Under *Hewitt*, a state statute can give rise to a federally protected liberty interest by using mandatory language and placing substantive limitations on official discretion. *See Hewitt*, 459 U.S. at 472; *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1044 (9th Cir. 2002). Here, section 208.3(b)(2) prohibits without qualification the use of room confinement "for the purposes of . . . coercion." Defendants note that section 208.3(b)(1) also provides that "[r]oom confinement shall not be used before other less restrictive options have been attempted and exhausted, unless attempting those options poses a threat to the safety or security of any minor, ward, or staff." That provision may allow discretion regarding whether to try less restrictive options before using room confinement, but it does not permit discretion to use room confinement for purposes of coercion. Section 208.3 therefore substantively limits SFJH officials' discretion and gives rise to a protected liberty interest that Defendants violated by subjecting M.B. to three days of room confinement. *Cf. Chino*, 105 F.3d at 499; *Valdez*, 302 F.3d at 1045. At the hearing on the motions, Defendants' counsel argued that M.B. proffered insufficient evidence to permit a reasonable jury to conclude that the procedural protections he was actually afforded were inadequate. However, because this argument was raised for the first time at the hearing, thereby preventing M.B. from presenting evidence in response to it, the Court does not consider it. *See Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2020 WL 5517244, at \*5 (N.D. Cal. Sept. 14, 2020). Therefore, a reasonable jury could conclude Defendants violated M.B.'s procedural due process rights.

Second, a reasonable jury could conclude that Defendants violated M.B.'s substantive due process rights. Conditions of detention that "amount to punishment" violate detainees' substantive due process rights. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Absent an intent to punish, whether Defendants' "restrictions and practices constitute punishment in the constitutional sense depends on whether they are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." *Id*. at 561.

7

Even assuming the room confinement was not intended to punish M.B. and that use of room confinement to elicit information about how M.B. obtained the contraband did not constitute punishment, a reasonable jury could conclude that M.B.'s room confinement was excessive in relation to a legitimate nonpunitive governmental purpose.  Though Defendants observe that safety concerns arising from the discovery of contraband and subsequent threats by other detainees could constitute a legitimate nonpunitive purpose (*see* Dkt. No. 113-1 at 29), a reasonable jury could conclude that the threats were not credible.  Thomasson's contemporaneous email identified the presence of contraband in M.B.'s cell as the sole safety concern at the time.  (*See* Dkt. No. 111-3 at 50.)  After evaluating witness credibility, a reasonable jury could conclude that the additional threats and safety concerns were not in fact present but were instead *post hoc* justifications generated during the investigation of the incident. A reasonable jury could further conclude that M.B.'s three-day detention was excessive in relation to any safety concerns associated with the finding of contraband, given that the contraband had already been confiscated from M.B.'s cell at the time of his room confinement (*Id*. at 50–51).  *See France v. Allman*, No. 15-cv-04078-JSC, 2016 WL 7439577, at *2 (N.D. Cal. Dec. 27, 2016) (placement in safety cell did not violate due process given existence of credible, ongoing threat).  Accordingly, a reasonable jury could find that Defendants violated M.B.'s substantive due process rights.

Nonetheless, Defendants are entitled to summary judgment on M.B.'s procedural and substantive due process claims because they are protected by qualified immunity.  Qualified immunity shields state officials from claims for money damages unless a plaintiff establishes "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  The purported "clearly established" right must not be defined at a high level of generality.  *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam).  "The dispositive question is whether the violative nature of

*particular* conduct is clearly established." *Id*. (emphasis in original) (internal quotation marks omitted).

M.B. has failed to carry his burden of establishing that his room confinement violated clearly established law under the Fourteenth Amendment at the time. As to M.B.'s procedural due process rights, while the Court concludes that the *Hewitt* test applies to M.B.'s procedural due process claim, M.B.'s briefing did not identify any clearly established law addressing the question of whether the *Hewitt* test or the *Sandin* test applies to the issue of whether juvenile detainees who have been adjudicated delinquent have a state-created liberty interest conferred by a state statute with mandatory language. Nor could M.B.'s counsel identify any clearly established law addressing this question at the hearing on the motions. Therefore, because it was not clearly established at the time of M.B.'s room confinement that *Hewitt* applied to him, qualified immunity precludes liability because a reasonable official would not have necessarily known that violations of section 208.3 also violated the Fourteenth Amendment. *See al-Kidd*, 563 U.S. at 741. For the same reasons, qualified immunity would shield Defendants from damages liability even if the *Sandin* test applied. Neither M.B.'s briefing nor his counsel's argument at the hearing identified any clearly established law indicating that the room confinement to which M.B. was subjected "impose[d] atypical and significant hardship on" him "in relation to the ordinary incidents" of juvenile detention. *See Sandin*, 515 U.S. at 484. Accordingly, a reasonable official would not necessarily know that subjecting M.B. to room confinement given the circumstances of this case violated the Fourteenth Amendment.

As to M.B.'s substantive due process rights, M.B. has failed to identify any cases clearly establishing that imposing a restriction on a juvenile detainee to extract information pertinent to overall detention facility safety constitutes an "intent to punish on the part of . . . officials" for substantive due process purposes. *Bell*, 441 U.S. at 538. M.B. has also failed to identify any clearly established law indicating that the room confinement to which he was subjected was excessive in relation to Defendants' need to obtain information for their investigation and for the safety of him and other detainees in his unit. Thus, a reasonable officer would not necessarily

know that by subjecting M.B. to three days of room confinement for information extraction and safety purposes, they would be violating the Fourteenth Amendment.

For the foregoing reasons, Defendants are entitled to qualified immunity. Accordingly, Defendants' motion for summary judgment on M.B.'s Fourteenth Amendment claim is granted.

### E.    *Monell* Claim

The parties' cross-motions for summary judgment as to the *Monell* claim are denied. Material disputes of fact exist as to whether SFJH had a longstanding practice or custom of using room confinement as punishment.

As an initial matter, M.B.'s *Monell* claim is not barred by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 113-1 at 22.) For a grievance to exhaust a claim under the PLRA, it must "alert[] the [detention facility] to the nature of the wrong for which redress is sought." *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010)). Even though M.B.'s grievance did not state explicitly that he was bringing a *Monell* claim, he indicated that he was seeking "a change in policies and practices" so that SFJH would not violate his rights or the rights of other detainees in the future. (Dkt. No. 18 at 92.) This statement is enough to alert SFJH that he was challenging the policies and practices that resulted in his being placed on room confinement. *Cf. Rich v. Pereira*, No. 18-cv-06266-EMC, 2020 WL 3414703, at *8 (N.D. Cal. June 22, 2020).

In support of his assertion that SFJH had a longstanding practice or custom of using room confinement as punishment, M.B. points to reports from DRC and the BSCC. The DRC report, dated February 23, 2016, found that SFJH "uses room confinement as punishment, and also places youth on room confinement for months at a time" with "little due process or written guidelines for when and how youth are put on room confinement, and how they can come off of room confinement." (Dkt. No. 110-14 at 3.) It further found that those on room confinement are "allowed out of a cell as little as an hour a day" and that the manner in which room confinement is used "violate[s] [established] guidelines and place[s] youth . . . at risk of harm." (*Id.*) In one BSCC report, dated February 11, 2021, the BSCC stated that it "reviewed several incident

reports related to room confinement" and found that in some cases, "youth were placed in their rooms as a sanction." (Dkt. No. 110-15 at 5.) Based on this evidence, a reasonable jury could conclude that SFJH had a longstanding practice or custom of using room confinement as punishment.

A jury could also reach a contrary conclusion. Defendants argue that this evidence is too remote in time, describes isolated and sporadic incidents, and addresses state law violations rather than federal constitutional violations. (*See* Dkt. No. 113-1 at 33.) Instead, Defendants point to the San Francisco Juvenile Probation Department's written policies and state law, which prohibit the use of room confinement for coercive and punitive purposes. (*See* Dkt. No. 113-15 at ¶ 5; Dkt. No. 113-17.) A reasonable jury could therefore conclude that the DRC and BSCC reports are inadequate to suggest the existence of an unwritten custom or policy of using room confinement for punitive purposes—particularly given the existence of a written policy prohibiting precisely that. M.B. and Defendants' cross-motions for summary judgment on the *Monell* claim are denied.[2]

### F.    Bane Act Claim

Defendants' motion for summary judgment on the Bane Act claim is granted, and M.B.'s motion is denied. To establish a claim under the Bane Act, a plaintiff must prove that the defendant acted with specific intent to violate their protected rights. *See Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 803 (2017). Specifically, a plaintiff must demonstrate (a) that the right at issue is "clearly delineated and plainly applicable under the circumstances of the case" and (b) that the defendant "commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Id.* (cleaned up). As stated above, M.B. has failed to demonstrate that his room

---

[2] Contrary to Defendants' suggestion, the Court did not dismiss M.B.'s failure-to-train theory for his *Monell* claim but merely held that the *Monell* claim survived dismissal without restricting that claim to any particular theory. (Dkt. No. 34 at 3-4.) Thus, denying Defendants' motion for summary judgment on this theory does not "revive" the theory or reopen the window for discovery on it.

confinement violated clearly established law under the Fourteenth Amendment at the time.  For similar reasons, his Fourteenth Amendment rights were not clearly delineated and plainly applicable to the circumstances of this case for Bane Act purposes.  *See Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018).  Nor were M.B.'s state law rights clearly delineated and plainly applicable because it was unclear that placing a juvenile detainee in room confinement to find out information relevant to safety constitutes coercion.  Accordingly, Defendants' motion for summary judgment on the Bane Act claim is granted, and M.B.'s cross-motion is denied.

### G.    Supervisory Liability Under Section 1983

Defendants' motion for summary judgment on the supervisory liability claim against Thomasson is granted, and M.B.'s motion is denied.  M.B. fails to identify any predicate constitutional violations by Hicks and Warren Johnson, Thomasson's subordinates, let alone any clearly established violations.  Thus, supervisory liability does not attach to Thomasson.  *See Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Furthermore, as stated above, qualified immunity shields Thomasson from liability on M.B.'s constitutional claims for Thomasson's own actions concerning M.B.'s room confinement.  Accordingly, Defendants' motion for summary judgment on this claim is granted, and M.B.'s motion is denied.

### H.    Negligence Claim

Defendants' motion for summary judgment on the negligence claim is denied.  Defendants argue (a) that M.B. cannot establish that Defendants owed him a duty with regard to their decision to subject him to room confinement and (b) that Defendants are entitled to discretionary act immunity under California Government Code section 820.2.  (Dkt. No. 113-1 at 39.)  Neither argument justifies granting summary judgment.

It is well established that custodians owe their detainees a duty to protect them from foreseeable harm.  *Cf. Giraldo v. Cal. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 250–51 (2008) (describing "a duty of care on a jailer owed to a prisoner" as the "epitome of a special relationship").  Defendants are therefore incorrect that they did not owe M.B. a duty when

12

deciding to subject him to room confinement, which a reasonable jury could find would foreseeably cause him harm.

Defendants are also not entitled to discretionary act immunity. Under California Government Code § 820.2, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." While discretionary governmental functions are entitled to immunity under section 820.2, ministerial functions are not. *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995). In explaining how to draw the line between discretionary functions and ministerial ones, the California Supreme Court acknowledged that "[a]lmost all acts involve some choice among alternatives, and the statutory immunity thus cannot depend upon a literal or semantic parsing of the word 'discretion.'" *Id.* Instead, the California Supreme Court drew the line based on the difference between "planning" and "operational" functions of government. *Id.* "Immunity is reserved for those *basic policy decisions* which have been expressly committed to coordinate branches of government," because judicial interference in such "areas of quasi-legislative policy-making" would be "unseemly." *Id.* (emphasis in original, alterations and citations omitted). Thus, immunity "applies only to *deliberate and considered* policy decisions." *Id.* (emphasis in original). By contrast, "there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." *Id.* Thus, a bus driver's decision not to intervene in a violent assault, a therapist's failure to warn a homicide victim of the patient's threats to kill her, and a police officer's negligent handling of a traffic investigation were all non-immune decisions, despite the judgment they required. *Id.* at 981–82.

Here, Defendants' actions fall on the non-immune "operational" side of the line, rather than the immune "planning" side. State law and San Francisco Juvenile Probation Department policy require the existence of safety concerns in order to justify subjecting a juvenile detainee to room confinement without considering less restrictive options; they also prohibit the use of room confinement for coercive purposes. M.B.'s claims do not challenge those policies but instead challenge Defendants' implementation of those policies as applied to his situation. Defendants'

13

decisions, while requiring some level of judgment, were not quasi-legislative plans involving deliberate and considered policy choices. *See Luttrell v. Hart*, No. 19-cv-07300-EJD, 2020 WL 5642613, at *8 (N.D. Cal. Sept. 22, 2020). Defendants are thus not entitled to discretionary act immunity, and their motion for summary judgment on the negligence claim is denied.

## I.      Declaratory and Injunctive Relief, and Punitive Damages

Defendants' motion for summary judgment is granted as to M.B.'s request for declaratory and injunctive relief and denied as to M.B.'s request for punitive damages. M.B. does not dispute that his release from SFJH moots his request for declaratory and injunctive relief. *See Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). However, as discussed above, a reasonable jury could conclude that Thomasson subjected M.B. to room confinement for information extraction purposes, that SFJH had a policy and practice of using room confinement as punishment, and therefore that Defendants were reckless as to M.B.'s Fourteenth Amendment and state law rights. Accordingly, Defendants' motion is granted as to M.B.'s request for declaratory and injunctive relief and denied as to his request for punitive damages.

## V.      CONCLUSION

For the foregoing reasons, M.B.'s motion for summary judgment is denied. Defendants' motion for summary judgment is denied as to M.B.'s *Monell* claim, negligence claim, and request for punitive damages, and granted as to all other claims.

**IT IS SO ORDERED.**

Dated: June 29, 2026

RITA F. LIN
United States District Judge